IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ALISON KELLY** <br> 8135 Celeste Drive, Unit 4119 <br> Naples, Florida <br><br> Plaintiff, <br><br> v. <br><br> **GREGORY FOERTSCH** <br> 5005 Bart Allen Lane <br> Baldwin, Maryland 21013 <br><br> and <br><br> **BIT REACTOR, LLC** <br> 210 Schilling Circle, Ste 100 <br> Hunt Valley, Maryland 21031 <br><br> Defendants | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> *    Civil Action No. _____ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Alison Kelly (hereinafter "Kelly"), by her attorneys, Donald J. Walsh, Marie Ignozzi, Stacey Torres, and RKW, LLC, sues Defendants, Gregory Foertsch (hereinafter "Foertsch") and interested party, Bit Reactor, LLC (hereinafter "Bit Reactor"), for breach of fiduciary duties, breach of contract, and declaratory relief, and for her causes of action, states:

1. This action is to establish and confirm that Kelly is a co-founder and fifty percent member of Bit Reactor, which she and Foertsch started. Despite an undeniable trail of joint efforts, ownership and successes which Foertsch could not have obtained on his own, Foertsch has unilaterally declared himself to be the sole owner of Bit Reactor, has taken efforts to retain undeserved financial benefits for himself which were undisclosed and hidden from Kelly, and has embarked on unchecked efforts to expel Kelly from their jointly-owned company through

oppressive and controlling tactics in breach of his obligations to Kelly and Bit Reactor. Without Court intervention, Foertsch will continue his selfish motives harming the value of Kelly's interest in Bit Reactor.

2. At all times herein, Bit Reactor is a Maryland limited liability company which develops computer games and software. It has been contracted by a publisher to design and build a computer game based on the movie franchise, Star Wars, and has other game ideas in development. Bit Reactor was originally started by four individuals with Kelly and Foertsch being the only two remaining members.

3. At all times herein, Kelly is a Florida resident. At the time of formation of Bit Reactor, she had 18 years of experience in the software and gaming industry in business development, operations and strategy. Kelly and Foertsch have known each other and been friends since 2004.

4. At all times herein, Foertsch is a Maryland resident and has 25 years of experience in software and game development. Prior to starting Bit Reactor, he worked at Firaxis Games until he was terminated.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), because complete diversity of citizenship exists and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6. This Court is the proper venue for the dispute pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant resides in, and the cause of action arose in, Baltimore County, Maryland.

7. At some time in 2019, Kelly and Foertsch, in conjunction with two other individuals, conceived of the idea for starting a software development gaming company. From roughly January 2020 to January 2021, the parties worked together, mostly late at night and on

weekends, to develop their concept for a game and construct and refine pitches targeted to possible investors.

8. In January 2020, the Parties' prospects of making this endeavor a success improved dramatically when Kelly facilitated the group providing a pitch to executives at Respawn, a subsidiary of Electronic Arts, Inc. (collectively "EA"), a well-known gaming company. EA executives were exploring the idea of financing to get the project started, however, EA naturally wanted to contract with a company, not just a collection of aspiring game developers.

9. The Parties agreed to start Bit Reactor, executed non-disclosure agreements, agreed upon their mutual ownership interest, and continued to work on development and the EA contract.  EA presented the group with a non-binding term sheet in February, 2021.

10. Throughout this initial period, and as recently as the Spring of 2024, Foertsch continued to identify to third parties that Kelly was one of Bit Reactor's co-founders.  In addition to the external acknowledgements of her efforts and her part in creating Bit Reactor, Foertsch participated in many contemporaneous Slack chats, emails, meeting, and other communications internally and externally acknowledging Kelly's interest in Bit Reactor.

11. Although no written Operating Agreement is necessary under Maryland law, the parties began discussions regarding an Operating Agreement.  As those discussions developed and one initial member left the group, by March, 2021, the remaining three parties, agreed on equal ownership in Bit Reactor.

12. The Parties never finalized a written Operating Agreement.  In the last version of the draft Operating Agreement, circulated on April 27, 2021, Foertsch acknowledged the equal ownership of the three members. *See* Exhibit 1.

13. All parties also agreed that Foertsch was to be the manager of Bit Reactor identified as its CEO and Creative Director and Kelly was to be the Chief Operating Officer. Exhibit 2 identifies the duties and objectives which Foertsch outlined for each of the parties in these roles.

14. Bit Reactor and EA signed a contract on June 10, 2021. Thereafter, in addition to the efforts made to develop the game concept and development, which was pitched and sold to EA, the Parties collaboratively undertook considerable steps toward building out Bit Reactor's infrastructure, purchasing equipment and software, hiring staff, employment practices and benefits, engaging on contracts with service providers and banks, and obtaining space for the business' operations. Kelly fully participated and was involved in this entire process.

15. Once the necessity of getting business operations in place became a more immediate need, Kelly and Foertsch's attention justifiably turned away from formalizing the Operating Agreement and toward developing and delivering a successful game as was contracted with EA.

16. As of January 2021, the only three members remaining were Foertsch, Kelly and Thomas Whittaker who had agreed on equal one-third ownership interests in Bit Reactor. In the fall of 2023, Mr. Whittaker resigned from Bit Reactor, surrendered and renounced any further interest in Bit Reactor. His departure left fifty percent (50%) ownership interest in each of the only two remaining members, Foertsch and Kelly.

17. After Mr. Whittaker exited the Company, beginning in late 2023 and continuing through today, Foertsch began to treat Kelly differently and was far more aggressive toward her.

18. In addition to Foertsch's behaviors, despite complaints from numerous employees, Foertsch refused to discipline and/or terminate another Bit Reactor employee who

was acting inappropriately and unprofessionally in the office and was insubordinate to Kelly. Kelly encountered difficulties with this employee as did other employees. People noted that he was rude, crudely offensive, and was insensitive to the employees.

19. Despite complaints by Kelly and other employees about this individual, no action was taken and it was later discovered that Foertsch gave this employee an unapproved raise, an enhanced title and required this employee to report solely to Foertsch.

20. Despite her position as an owner of the business and as its COO, following her complaints to Foertsch, this employee became openly more aggressive and hostile toward Kelly and went directly to Foertsch concerning issues within the scope of Kelly's duties as COO. Over time, Foertsch unilaterally stripped most of those duties from Kelly and reassigned them to an employee subordinate to Kelly.

21. In furtherance of their efforts to expel Kelly, Foertsch locked her out of Bit Reactor's financials and QuickBooks. Foertsch also directed employees to not respond to Kelly's repeated request for access. She complained, but her access was not restored nor was it granted going forward.

22. During this time period, Kelly continued to hear comments from other employees who echoed her unease with this other employee's inappropriate behaviors that were discriminatory in nature and condoned by Foertsch.

23. When Kelly again brought this misconduct up with Mr. Foertsch, he was dismissive of her complaints. It became clear that Foertsch condoned the misogynistic and brutish behavior and was utilizing this employee as his "hired gun" to minimize Kelly's impact and position in the Company and pressure her to exit Bit Reactor, leaving Foertsch as Bit Reactor's sole remaining owner. Rather than investigate and cure any workplace issues,

5

Foertsch dictated that Kelly was not to have any further conversations with employees outside of pre-scheduled meetings. Upon information and belief, Foertsch also told other Bit Reactor employees they were not to communicate with Kelly.

24. After attempting to isolate her from their employees, Mr. Foertsch continued to treat Kelly poorly and differently from other people at Bit Reactor. Recently, Foertsch intentionally began to exclude Kelly from meetings involving the technical structure and engineering of Bit Reactor, meetings with EA's representatives, and meetings with Bit Reactor's advisors in which she was regularly involved. Kelly justifiably felt this was inappropriate, contrary to the agreement with EA, and obviously interfered with her role as COO and co-founder of the Company.

25. In addition to the behavior in excluding Kelly's role and impact in Bit Reactor, unknown to Kelly, Foertsch unilaterally increased his and his hired gun's salary, used Company resources and funds for his personal benefit without full disclosure and transparency to is co-owner of Bit Reactor, obtained loans utilizing Bit Reactor's assets, and falsely claimed to numerous third-parties, including the IRS and lenders, that he is the 100% owner of Bit Reactor and has the full authority to act on behalf of Bit Reactor.

26. Consistent with Foertsch's direction, Foertsch's hired gun has also been granted excessive authority at the Company, claiming to be an officer of the Company and making false representations to third parties the nature of Bit Reactor and his authority to act on behalf of Bit Reactor.

27. In early 2024, Foertsch also had corporate counsel for Bit Reactor prepare an Operating Agreement for Foertsch to present to third parties fraudulently stating that Foertsch had 100% ownership in Bit Reactor. Counsel prepared this document notwithstanding the

representations to EA, his consultations with and representation of Kelly months earlier in obtaining a release from Mr. Whittaker as Whittaker exited Bit Reactor and counsel's own acknowledgment that Kelly had an ownership interest in Bit Reactor.

28.  Foertsch has claimed to a third party that the value of his claimed 100% interest in Bit Reactor as $43,000,000.

29.  Foertsch's actions and efforts and his continued false claims of 100% ownership in Bit Reactor have caused damages to Kelly in excess of $20,000,000.

## COUNT I
### Breach of Fiduciary Duty

30.  Plaintiff restates and incorporates by reference each of the allegations of paragraphs 1 through 29 hereof.

31.  Foertsch, as the President of Bit Reactor and as its manager, was a fiduciary of Bit Reactor.

32.  As a fiduciary, Foertsch owed Bit Reactor and Kelly obligations of the highest degree in transparency, honesty, disclosure and to not self-deal or profit at the expense of Bit Reactor or its owners.

33.  In addition, Foertsch owed Kelly obligations to not use the business assets for his personal gain, to not do any other act which make it impossible to carry on the ordinary business of the Company, to be honest in its dealings with third-parties, adhere to its agreements with third-parties, to keep Kelly fully informed of discussions with vendors and EA, to not restrict Kelly from being present on the premises when conversations with such parties were being held and had obligations to provide the true and full information regarding the state of the business and financial condition of the Company.

34. Foertsch knew, and deliberately did not inform, third parties that he was not the 100% owner of Bit Reactor and that Kelly was the 50% owner of the Company.

35. In addition, Foertsch knew, and deliberately did not inform, Kelly that he was telling third-parties that he was the 100% owner of Bit Reactor; he was plundering the Company for his own personal benefit; that he was unilaterally making management decisions and benefiting those individuals who remained solely loyal to him; that he created sham transactions, false documents and forgeries to cover his activities; that he had demanded that Bit Reactor's employees not inform Kelly of his actions; that he was not providing Kelly true and full information regarding the state of the business and financial condition of the Company; and for such other and further reasons as shall be shown at trial.

36. Foertsch deliberately did not inform Kelly of these facts and took overt efforts to hide them from her blocking her access because he did not want her to question his actions or decisions and he desired to hide his actions. His purpose in not disclosing the facts was to have Kelly remain ignorant of some or all of the important facts pertaining to his activities and plundering of the Company, and effectively minimize any financial rewards she would reap while keeping all such rewards for himself.

37. Kelly justifiably relied upon Foertsch to inform her of the full and accurate facts necessary to make informed decisions regarding the Company and her rights as a member.

38. Foertsch's actions were intentional, deliberate and done with malice toward Kelly.

39. As a result thereof, Kelly suffered damages in excess of $75,000.

WHEREFORE, Alison Kelly seeks compensatory damages against Foertsch in an amount in excess of $75,000, punitive damages in an amount in excess of $3,000,000, award of her attorneys' fees and costs, and such other and further relief as may by proper and just.

## COUNT II
### Breach of Contract

40. Plaintiff restates and incorporates by reference each of the allegations of paragraphs 1 through 39 hereof.

41. Foertsch entered into a valid and binding contract with Kelly to form, create, run and split the profits of Bit Reactor.

42. In consideration of the contract and promises made by Foertsch, Kelly justifiably relied upon Foertsch's promise of ownership and fully performed all that was required of her to consummate the contract with Foertsch and worked with him in introducing the group to EA, negotiating and landing the deal with EA for Bit Reactor's initial game offering, and continuing to develop and build the infrastructure of Bit Reactor as noted above.

43. Foertsch breached his contract with Kelly when he decided to unilaterally claim 100% ownership in Bit Reactor, increase his salary, obtain personal benefits from the Company without her knowledge or consent, block her from the business and benefits of ownership in Bit Reactor and for such other and further reasons as shall be shown at trial.

44. As a result thereof, Kelly suffered damages in excess of $75,000.

WHEREFORE, Alison Kelly seeks compensatory damages against Foertsch in an amount in excess of $75,000, award of her attorneys' fees and costs and such other and further relief as may by proper and just.

## COUNT III
### Unjust Enrichment/Quantum Meruit

45. Plaintiff restates and incorporates by reference each of the allegations of paragraphs 1 through 44 hereof.

46. Foertsch promised Kelly that she would have an equal interest as him in Bit Reactor if she assisted him in forming, creating, running Bit Reactor and assisting it in selling its game development to a publisher such as EA.

47. Kelly justifiably relied upon Foertsch's promise of ownership and fully performed all that was required of her to consummate the contract with Foertsch and worked with him in introducing the group to EA, negotiating and landing the deal with EA for Bit Reactor's initial game offering, and continuing to develop and build the infrastructure of Bit Reactor as noted above.

48. Foertsch was unjustly enriched when he unilaterally claimed 100% ownership in Bit Reactor, increase his salary, obtained personal benefits from the Company without Kelly's knowledge or consent, blocked her from the business and benefits of ownership in Bit Reactor and for such other and further reasons as shall be shown at trial.

49. As a result thereof, Kelly suffered damages in excess of $75,000.

WHEREFORE, Alison Kelly seeks compensatory damages against Foertsch in an amount in excess of $75,000, award of her attorneys' fees and costs and such other and further relief as may by proper and just.

## COUNT IV
### Declaratory Relief

50. Plaintiff restates and incorporates by reference each of the allegations of paragraphs 1 through 49 hereof.

51. Kelly entered into a contract and arrangement with Foertsch to form Bit Reactor, profit from its success and equally share in the rewards of the Company with Foertsch.

52. Despite her performing faithfully and fully, Foertsch's actions noted above through which he has unilaterally claimed 100% of Bit Reactor and all benefits and rewards for himself were done solely to benefit himself and were in contradiction to his agreement with Kelly and her actions over the past 5 years.

53. An actual and justiciable controversy exists between the parties, for which a declaratory judgment of the Court is needed. Antagonistic claims are present between the parties, which indicate imminent and inevitable litigation. A declaratory judgment by this Court will terminate this controversy.

WHEREFORE, Alison Kelly respectfully requests:

a. That this Court determine, declare, and adjudicate that she is the 50% owner of Bit Reactor, LLC; and

b. Compel Foertsch to return to the Company all of the benefits which he received, took or benefited from when he wrongfully insisted he was the sole owner of Bit Reactor; and

c. That this Court award such other and further relief as this Court deems just and appropriate.

## COUNT V
### Accounting

54. Plaintiff restates and incorporates by reference each of the allegations of paragraphs 1 through 53 hereof.

55. Among Defendant Foertsch's legal obligations is to properly use all Company assets strictly for the benefit of all members, to provide a proper accounting of all financial affairs of the Company, and advise Kelly of all liabilities and claims made against the Company.

56. In addition, under Md. Corps. & Assn Code Ann. §4A-406, Ms. Kelly, as a member of Bit Reactor, has the right to inspect and copy "True and full information regarding the state of the business and financial condition of the limited liability company" and "[o]ther information regarding the affairs of the limited liability company as is just and reasonable for any purpose reasonably related to the member's membership interest."

57. As alleged above, Foertsch has refused to provide information regarding the business and financial condition of Bit Reactor and has actually created and produced to third-parties bogus documents to misrepresent the ownership of the Company.

58. The only means of obtaining accurate financial information regarding the Company is by obtaining a full and accurate accounting and disclosure of all business and financial transactions of Bit Reactor.

WHEREFORE, Alison Kelly requests the Court compel Defendants to permit and pay for a full and proper accounting of all financial transactions of the Company and such other and further relief as may be necessary and just under the circumstances.

## COUNT VI
## Fraud

59. Plaintiff restates and incorporates by reference each of the allegations of paragraphs 1 through 58 hereof and makes the following allegations in the alternative.

60. As alleged above, Kelly and Foertsch discussed the formation of a jointly owned company which would build software games. Foertsch agreed that their joint and combined efforts were necessary in order to build the company, sell its concepts and ideas to publishers and bring the games to market.

61. As noted above, justifiably relying on Foertsch's discussions and promises regarding joint ownership in the company, among other things, Kelly agreed to form Bit Reactor,

helped Foertsch develop and refine a pitch deck for the game to a publisher and assisted in landing Bit Reactor's first development contract with EA, getting Bit Reactor started and building out Bit Reactor's infrastructure, purchasing equipment and software, hiring staff, employment practices and benefits, engaging on contracts with service providers and banks, and obtaining space for the business' operations. With Foertsch's knowledge and consent, Kelly fully participated and was involved in this entire process.

62. After landing the development contract and based on Foertsch's promises of equal ownership in Bit Reactor, Kelly undertook considerable effort to further build the infrastructure for Bit Reactor and assist it in developing its first sold game.

63. The statements by Foertsch that he intended Kelly to be an equal owner in the Company and share in its profits and fortunes was a false representation of a material fact to Ms. Kelly.

64. Foertsch knew his representations concerning a joint ownership interest in Bit Reactor were false when he made them. Foertsch desired to induce Kelly to proceed with the landing of the development contract which he was unable to accomplish on his own. Thus, Foertsch's representations were made for the purpose of defrauding Kelly. The representations made by Foertsch to Kelly were made with the intention of having Kelly act and rely upon them.

65. Kelly's actions as noted above were accomplished in reliance upon Foertsch's statements, and Kelly was justified in her reliance because of the many conversations and communications she shared with Foertsch.

66. As a result of the intentional misrepresentations by Foertsch, Kelly incurred damages.

WHEREFORE, Alison Kelly seeks compensatory damages against Foertsch in an amount in excess of $75,000, punitive damages in an amount in excess of $3,000,000, award of her attorneys' fees and costs and such other and further relief as may by proper and just.

      /s/ *Donald J. Walsh*
Donald J. Walsh (Bar # 09384)
Marie Ignozzi (Bar # 29762))
Stacey Torres (Bar # 30944)
RKW, LLC
10075 Red Run Boulevard, Suite 401
Owings Mills, Maryland 21117
443-379-4011
dwalsh@rkwlawgroup.com
mignozzi@rkwlawgroup.com
storres@rkwlawgroup.com

Attorneys for Alison Kelly