**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(BALTIMORE)**

ALISON KELLY                               *

      Plaintiff,                          *

      v.                                 *          Civil Action No. <u>1:24-cv-02161-JKB</u>

GREGORY FOERTSCH, et al                    *

      Defendants                          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**MEMORANDUM IN RESPONSE TO MOTION TO DISMISS**</u>

# Table of Contents

Factual Background ............................................................................................................... 2

Legal Standards ................................................................................................................... 4

I.     Count II Sufficiently Pled a Cause of Action for Breach of Contract ............................ 6

II.    Defendants are Wrong that The Statute of Frauds Bars Enforcement ......................... 15

III.   Just as Defendants' Claims that There Was No Contract Fails, So Does Their Efforts to Dismiss the Breach of Fiduciary Obligations ....................................................................... 16

IV.   Declaratory Relief is Properly Pled ............................................................................. 17

V.    Maryland Recognizes a Cause of Action for an Accounting ........................................ 18

VI.   Unjust Enrichment and Quantum Meruit Relief are Appropriately Pled ..................... 21

VII.    Plaintiff Clearly Pled Actionable Fraud Against Foertsch in Count VI ................... 26

Conclusion ......................................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*A Society Without a Name v. Virginia*, 655 F.3d 342 (4th. Cir. 2011), cert. denied, 566 U.S. 937 (2012) .................................................................................................................... 5

*AAC HP Realty, LLC v. Bubba Gump Shrimp Co.*, 243 Md. App. 62, 219 A.3d 99 (2019) ......... 21

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 665 A.2d 1038 (1995) .... 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 4

*Bank of New York v. Sheff*, 382 Md. 235, 854 A.2d 1269 (2004).......................................... 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................................. 4, 5

*Berry & Gould, P.A. v. Berry*, 360 Md. 142, 757 A.2d 108 (2000) ...................................... 23

*Braude v. Robb*, 255 Md. App. 383, 279 A.3d 1153 (2022) ......................................... 11, 13

*Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443 (D. Md. 2010) 24, 26

*Cnty. Comm'rs for Carroll Cnty. v. Forty West Builders, Inc.*, 178 Md. App. 328, 13 A.2d 596 (2008) ............................................................................................................... 12

*Cochran v. Norkunas*, 398 Md. 1, 919 A.2d 700 (2007)................................................... 12

*Cty. Comm'rs of Caroline Cty. v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (2000) ...................................................................................................................... 10

*Della Ratta v. Larkin*, 382 Md. 553, 856 A.2d 643 (2004)............................................... 17

*Desser v. Woods*, 266 Md. 696, 296 A.2d 586 (1972)...................................................... 25

*Dolan v. McQuaide*, 215 Md. App. 24, 72 A.3d 294 (2013).............................................. 8

*Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 857 A.2d 1095 (2004) ....................... 24

*Dynacorp Ltd. v. Arametel Ltd.*, 208 Md. App. 403, 208 A.2d 403 (2012) ....................... 28

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011) ............ 5

*Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 107 A.3d 1183 (2015) ..................................................................................................................... 9

*Fauconier v. Clarke*, 966 F.3d 265 (4th Cir. 2020)........................................................... 4

*First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 94, 838 A.2d 397 (2003) .. 28

*Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 756 A.2d 963 (2000)............... 24, 26

*Friedman & Fuller, P.C. v. Funkhouser*, 666 A.2d 1298, 1306-07 (Md. App. 1995) ............. 16

*FZata, Inc., v. Guan*, Nos. 1385 & 1596, Sept. Term 2021, 2023 WL 3134312 (Md. App. Ct. 2023), cert. denied, 486 Md. 400, 310 A.3d 658 (2024)........................................... 9, 29

*George Wasserman & Janice Wasserman Goldstein Family LLC v. Kay*, 197 Md. App. 586, 14 A.3d 1193 (2011)........................................................................................................... 17

*Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 904 A.2d 511 (2006)................................ 24

*Globe Home Improvement Co. v. McCarty*, 204 Md. 513, 105 A.2d 216 (1954) .................. 13

*Golub ex rel. Golub v. Cohen*, 138 Md. App. 508, 772 A.2d 880 (2001) ............................ 18

*Gross v. Sussex Inc.*, 332 Md. 247, 630 A.2d 1156 (1993) ................................................ 29

*Harford Co. v. Town of Bel Air*, 348 Md. 363, 704 A.2d 421 (1998) ................................ 12

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999).................... 27

*Herring v. Offutt*, 266 Md. 593, 295 A.2d 876 (1972)..................................................... 25

*Hill v Cross Country Settlements, LLC*, 402 Md. 281, 936 A.2d 343 (2007).......................... 23

ii

*Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473 (4th Cir. 2015) ................................................. 5

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) ........................................................5, 11, 21

*Kantsevoy v. LumenR, LLC*, 301 F. Supp. 3d 577 (D. Md. 2018) ........................................... 22

*Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011), cert. denied, 565 U.S. 825
  (2011) ....................................................................................................................... 14

*King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016) ........................................................... 5

*Langford v. Joyner*, 62 F.4th 122 (4th Cir. 2023) ........................................................... 5

*Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 749 A.2d 796 (2000) .......................... 24

*MacBride v. Pishvaian*, 402 Md. 572, 937 A.2d 233 (2007) ............................................. 24

*Maltas v. Maltas*, 197 F. Supp. 2d 409 (D. Md. 2002), *rev'd on other grounds, remanded*, 65 F.
  App'x 917 (4th Cir. 2003) .......................................................................................... 25

*Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 114 A.3d 676 (2015)................. 10, 21

*Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. 766, 471 A.2d 1121 (1984).............. 10

*Matter of Bridge Watersports, LLC*, 656 F. Supp. 3d 553 (D. Md. 2023), *aff'd sub nom. Bridge
  Watersports, LLC v. Tressler*, No. 23-1312, 2024 WL 837908 (4th Cir. Feb. 28, 2024) .......... 13

*Mogavero v. Silverstein,* 142 Md. App. 259, 790 A.2d 43 (2002) ...............................8, 10, 11, 22

*Mohiuddin v. Doctors Billing & Management Solutions, Inc.*, 196 Md. App. 439, 9 A.3d 859
  (2010) ....................................................................................................................11, 21

*Mona v. Mona Elec. Group, Inc.*, 176 Md. App. 672, 934 A.2d 450 (2005) ............................ 17

*Nagel v. Todd*, 185 Md. 512, 45 A.2d 326 (1946)........................................................... 19

*O'Hara v. Kovens*, 305 Md. 280, 503 A.2d 1313 (1986)................................................... 26

*P.V. Properties, Inc. v. Rock Creek Village Associates Ltd. Partnership*, 77 Md. App. 77, 549 A.2d
  403 (1988) ................................................................................................................ 18

*Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312 (4th Cir. 2019)........ 4

*Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 674 A.2d 521 (1996) ..................11, 16

*Pennwalt Corp. v. Nasios*, 314 Md. 433, 550 A.2d 1155 (1988) ......................................... 24

*Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981) .............................................. 24

*Ray v. William G. Eurice & Bros.*, 201 Md. 115, 93 A.2d 272 (1952)..................................... 13

*Republic Properties Corp. v. Mission W. Properties, LP*, 391 Md. 732, 895 A.2d 1006 (2006).. 17

*Retfalvi v. United States*, 930 F.3d 600 (4th Cir. 2019)..................................................... 5

*Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244 (4th Cir. 1993) ................. 5

*Scheffres v. Columbia Realty Co., Inc.*, 244 Md. 270, 223 A.2d 619 (1966)............................ 13

*Semenova v. Md. Transit Admin.*, 845 F.3d 564 (4th Cir. 2017) ......................................... 5

*Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 983 A.2d 408 (2009)..................................... 17

*Slick v. Reinecker*, 154 Md. App. 312, 839 A.2d 784 (2003)............................................. 10

*Snyder v. Cearfoss,* 187 Md. 635, 51 A.2d 264 (1947)..................................................... 13

*Son v. Margolius, Mallios, Davis, Rider & Tomar*, 114 Md. App. 190, 689 A.2d 645 (1997), *rev'd
  in part on other grounds*, 349 Md. 441, 709 A.2d 112 (1998)............................................. 13

*St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. CV ELH-21-2337, 2023
  WL 2743361 (D. Md. Mar. 31, 2023) ............................................................................ 12

*State Construction Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449 (D. Md. 2019)..................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)....................................... 14

*United States v. Hartford Accident & Indem. Co.*, 168 F. Supp.3d 824 (D. Md. 2016)............... 13

*Vogel v. Estate of Hillman,* No. 1902, Sept. Term 2019, 2021 WL 2451303 (Md. Ct. Spec. App. June 16, 2021) ................................................................................................................. 9

*Weil v. Free State Oil Co.,* 200 Md. 62, 87 A.2d 826 (1952) ................................................. 4, 13

*Weisman v. Connors*, 312 Md. 428, 540 A.2d 783 (1988) ......................................................... 29

*White v. Kennedy Krieger Inst., Inc.*, 221 Md. App. 601, 110 A.3d 724 (2015) .......................... 28

*Willner v. Dimon*, 849 F.3d 93 (4th Cir. 2017) ......................................................................... 4

**Other Authorities**

Fed. Prac. & Proc. Civ. § 1238 (4th ed.) ................................................................................. 18

Richard A. Lord, Williston on Contracts, § 1.5, pp. 20-21 (1990) .............................................. 11

**Rules**

28 U.S.C. § 2201 .................................................................................................................... 18

Fed. R. Civ. P. 8(a)(2) ............................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 4, 5

Fed. R. Civ. P. 57 ................................................................................................................... 18

Local Rule 103.1(c) ................................................................................................................ 18

MD Code, Corps. & Assoc., § 4A-406 ..................................................................................... 19

MD Code, Corps. & Assoc., § 4A-601 ....................................................................................... 9

Md. Code Ann., Corps. & Ass'ns § 4A-402 ............................................................................. 8, 9

## MEMORANDUM IN SUPPORT OF RESPONSE TO
## MOTION TO DISMISS

Plaintiff, Alison Kelly, by her undersigned counsel, submits this Memorandum in Support of her response to Defendants' Motion to Dismiss. As explained below, Defendants' Motion must be denied since it ignores the factual allegations of the Complaint and identifies no legal basis for dismissing any portion of the Complaint.

Kelly's action arises from her allegation that she was a co-founder of Bit Reactor and had an agreement with Foertsch to each have an equal interest in the company. Despite spilling much ink, Defendants focus their attack on their notion that no contract was reached with Kelly to provide her an ownership interest in Bit Reactor. This is a factual dispute which can only be dispelled through discovery. Defendants' entire argument is directly contrary to the unequivocal allegations of the Complaint where Kelly states all parties reached an agreement on equal ownership and collectively worked on and in the Company. In making his argument, Foertsch does not attack the specific allegations in support of her claims including, among others, that the parties jointly developed and refined a pitch deck for a video game they wanted to create, that Kelly introduced the group to EA to pitch the idea, that the parties were successful in convincing EA to purchase the game from them, that Bit Reactor was created to enter into this Agreement with EA, that ownership in Bit Reactor was divided evenly among the owners, nor that Foertsch and Kelly then began to build out Bit Reactor with him as CEO and her as COO.

Seeking to get the Court to reject the allegations of the Complaint that a contract to jointly develop and own Bit Reactor exists, Defendants seek to have the Court summarily decide on the allegations alone that the underlying contract to form the Company was missing elements and was "too vague" to be enforced. The issue at this stage of the proceedings is not whether in

fact a contract was formed, only whether Kelly has alleged sufficient facts to support her claims made in the Complaint. Just as occurred in the cases he cites, Defendants' claim that no contract ever existed is an argument Defendants can attempt to lodge only after discovery has been completed. Defendants' Motion to Dismiss must be denied.

## Factual Background

At some time in 2019, Kelly and Foertsch, in conjunction with two other individuals, conceived of the idea for starting a software development gaming company. From roughly January 2020 to January 2021, the parties worked together, mostly late at night and on weekends, to develop their concept for a game and construct and refine pitches targeted to possible investors. Complaint ¶7. In January 2020, the Parties' prospects of making this endeavor a success improved dramatically when Kelly facilitated the group providing a pitch to executives at Respawn, a subsidiary of Electronic Arts, Inc. (collectively "EA"), a well-known gaming company. EA executives were exploring the idea of financing to get the project started, however, EA naturally wanted to contract with a company, not just a collection of aspiring game developers. Complaint ¶8.

The Parties agreed to start Bit Reactor, executed non-disclosure agreements, agreed upon their mutual ownership interest, and continued to work on development and the EA contract. EA presented the group with a non-binding term sheet in February, 2021. Complaint ¶9. In addition to the allegations in the Complaint, attached as Exhibit A is a verbatim Slack communication in February, 2021 from Foertsch where he states the profit reserved for the owners were to be "divided equally among all four of us."[1]

---

[1] The irony is not lost that Foertsch chose a Mandalorian icon as his Slack avatar. Mandalorians value loyalty, integrity, and the fulfilment of their promises following a code of honor, known as the *Resol'nare*.

Throughout this initial period, and as recently as the Spring of 2024, Foertsch continued to identify to third parties that Kelly was one of Bit Reactor's co-founders. In addition to the external acknowledgements of her efforts and her part in creating Bit Reactor, Foertsch participated in many contemporaneous Slack chats, emails, meeting, and other communications internally and externally acknowledging Kelly's interest in Bit Reactor. Complaint ¶10.

No written Operating Agreement is necessary under Maryland law and the Parties never finalized a written Operating Agreement. [2] In the last version of the draft Operating Agreement, circulated on April 27, 2021, Foertsch acknowledged the equal ownership of the three members. Complaint ¶ 11-12, *see* Exhibit 1 to Complaint. All parties agreed that Foertsch was to be the manager of Bit Reactor, identified as its CEO and Creative Director, and Kelly was to be the Chief Operating Officer. Exhibit 2 to the Complaint identified the duties and objectives which Foertsch outlined for each of the parties in these roles. Complaint ¶13.

After Bit Reactor and EA signed a contract on June 10, 2021, in addition to the efforts made to develop the game concept and development, which was pitched and sold to EA, the Parties continued to perform their contract and collaboratively undertook considerable steps toward building out Bit Reactor's infrastructure, purchasing equipment and software, hiring staff, creating employment practices and benefits, engaging on contracts with service providers and banks, and obtaining space for the business' operations. Kelly, with Foertsch, fully participated and was involved in this entire process. Complaint ¶14.

As of January 2021, the only three members remaining were Foertsch, Kelly and Thomas Whittaker who had agreed on equal one-third ownership interests in Bit Reactor. In the fall of

---

[2] Bit Reactor has not made revenue as of yet since it is still developing the game which has not shipped. It has also elected to be taxed as a C Corporation and no K-1's are issued.

2023, Mr. Whittaker resigned from Bit Reactor, surrendered and renounced any further interest in Bit Reactor. His departure left fifty percent (50%) ownership interest in each of the only two remaining members, Foertsch and Kelly. Complaint ¶16.[3]

## Legal Standards

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6). A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, (2007). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, ; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684, (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions'...." (citation omitted)); *see also Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance

---

[3] Some of the facts related to Whittaker's departure are the subject of the Motion to Disqualify and are incorporated herein as necessary.

dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) (per curiam). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

The Fourth Circuit Court of Appeals has noted that Courts are to be "mindful of the fact that, at this early stage in the litigation, a plaintiff will not come to court fully armed with the requisite facts to prove their case." *Langford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023). In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), cert. denied, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). Rule 12(b)(6) "is intended [only] to test the legal adequacy of the

complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies ... if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.' " *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

## I. Count II Sufficiently Pled a Cause of Action for Breach of Contract

Defendants argue that Count II for Breach of Contract fails because the contract itself never existed and the Complaint's allegations of the contract "lack of definiteness and certainty." Accepting the allegations of the Complaint and any inferences in favor of Kelly as the Court must do at this stage, there is no doubt that the existence of a contract has been alleged.

> The Parties agreed to start Bit Reactor, executed non-disclosure agreements, agreed upon their mutual ownership interest, and continued to work on development and the EA contract. EA presented the group with a non-binding term sheet in February, 2021. Complaint ¶9.  In addition to the allegations in the Complaint, attached as Exhibit A is a verbatim Slack communication from Foertsch where he states the profit reserved for the owners were to be " divided equally among all four of us."

> Throughout this initial period, and as recently as the Spring of 2024, Foertsch continued to identify to third parties that Kelly was one of Bit Reactor's co-founders. In addition to the external acknowledgements of her efforts and her part in creating Bit Reactor, Foertsch participated in many contemporaneous Slack chats, emails, meeting, and other communications internally and externally acknowledging Kelly's interest in Bit Reactor. Complaint ¶10.

> Although no written Operating Agreement is necessary under Maryland law, and the Parties never finalized a written Operating Agreement. In the last version of the draft Operating Agreement, circulated on April 27, 2021, Foertsch acknowledged the equal ownership of the three members. Complaint ¶ 11-12, *see* Exhibit 1 to Complaint.  All parties still agreed that Foertsch was to be the manager of Bit Reactor identified as its CEO and Creative Director and Kelly was to be the Chief Operating Officer. Exhibit 2 identifies the duties and objectives which Foertsch outlined for each of the parties in these roles. Complaint ¶13.

> After Bit Reactor and EA signed a contract on June 10, 2021, in addition to the efforts made to develop the game concept and development, which was pitched and sold to EA, the Parties continued to perform their contract and collaboratively undertook considerable steps toward building out Bit Reactor's infrastructure,

purchasing equipment and software, hiring staff, employment practices and benefits, engaging on contracts with service providers and banks, and obtaining space for the business' operations. Kelly fully participated and was involved in this entire process.  Complaint ¶14

As of January 2021, the only three members remaining were Foertsch, Kelly and Thomas Whittaker who had agreed on equal one-third ownership interests in Bit Reactor. In the fall of 2023, Mr. Whittaker resigned from Bit Reactor, surrendered and renounced any further interest in Bit Reactor. His departure left fifty percent (50%) ownership interest in each of the only two remaining members, Foertsch and Kelly. Complaint ¶16.

Foertsch breached his contract with Kelly when he decided to unilaterally claim 100% ownership in Bit Reactor, increase his salary, obtain personal benefits from the Company without her knowledge or consent, block her from the business and benefits of ownership in Bit Reactor. Complaint ¶43.

As noted above, there is nothing that required every element of the contract to be alleged and spelled out in the Complaint which is designed to "show[ ] that the pleader is entitled to relief" and that it "state[s] a claim to relief that is plausible on its face."  Kelly has undeniably rung that bell through her allegations that a contract existed whereby she was an equal owner in Bit Reactor and that the parties continued to perform under it.

Beyond Defendants' baldly claiming there is no specificity in the contract which is alleged to exist and which has been performed by the parties for several years, Defendants do not say with any precision what portions of a contract are actually missing.  Foertsch does not suggest in any fashion what needed to be done for Kelly to be considered an owner with an evenly divided portion of the profits which was not done.  Foertsch does not claim there needed to be a capital investment more than the parties had accomplished, that execution of the Articles of Organization was necessary.[4]  He does not and cannot claim that a signed operating agreement among the owners was required since none is required under Maryland law, Md. Code Ann.,

---

[4]     Maryland Articles of Organization, including Bit Reactor's Articles, do not identify owners and only identify an authorized individual.  MD Code, Corporations and Associations, § 4A-204.

Corps. & Ass'ns § 4A-402 ("members *may* enter into an operating agreement not inconsistent with the articles of organization to regulate or establish any aspect of the affairs of the limited liability company, the conduct of its business, or the relations of its members"). Foertsch does not claim there were any other documents which needed to be completed by Kelly to be deemed an owner, and he does not claim that Kelly should have signed the EA agreement between it and Bit Reactor even though she signed the NDA with EA.

Kelly has alleged the parties initially came together to create a game and sell that game. She participated in the fundamental creation of the very start of the business, i.e., the creation of the ultimate product it was seeking to sell. She also arranged for meetings with EA to pitch the idea and sell the product. The parties agreed to an even split of the profits from the company. Thereafter, Kelly continued her work and efforts in developing the budget estimates necessary to consummate the contract with EA. As Kelly alleged, in addition to Foertsch's repeated acknowledgements of her as a "co-founder," even Foertsch acknowledged the specific discussions and promises with her including job descriptions for her role in the Company and supplying a draft operating agreement which listed the ownership percentages shared among the three original owners as well as internal operating issues among the owners to include.

Ignoring for the moment its factual inaccuracy, Defendants' argument in their Motion that no contract existed is premature and not proper fodder for a Motion to Dismiss as the cases identified in Defendants' Motion unequivocally demonstrated. All of them were made only after discovery and a complete factual record was developed. They provide no support for the arguments at this stage. *See Dolan v. McQuaide,* 215 Md. App. 24, 32, 72 A.3d 294, 399 (2013) (summary judgment); *Mogavero v. Silverstein,* 142 Md. App. 259, 273, 790 A.2d 43, 51 (2002) (summary judgment); *FZata, Inc., v. Guan,* Nos. 1385 & 1596, Sept. Term 2021, 2023 WL

3134312 (Md. App. Ct. 2023), *cert. denied,* 486 Md. 400, 310 A.3d 658 (2024) (appellate decision after trial); *Vogel v. Estate of Hillman,* No. 1902, Sept. Term 2019, 2021 WL 2451303 (Md. Ct. Spec. App. June 16, 2021) (summary judgment); *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.,* 441 Md. 290, 304, 107 A.3d 1183, 1191 (2015) (appellate decision after interlocutory order affirming settlement agreement reached on eve of trial).

Even more defeating to Defendants here is the fact that all of the previous cases relied upon by them all focus on corporate structures and what is necessary to be an owner under corporate law. Bit Reactor is a Maryland limited liability company and, similar to many states, under Maryland law, admission as a member also does not require capital contributions and, in the absence of an operating agreement requirement, is contingent only on the consent of the members. MD Code, Corps. & Assoc., § 4A-601.

Defendants errantly argue in their Motion, pp 16 and 17, that Kelly's reference to an unsigned operating agreement supports the absence of a contract. A signed operating agreement is not necessary to make someone a member of a Maryland limited liability company and Maryland does not even require operating agreements. Md. Code Ann., Corps. & Ass'ns § 4A-402. The unsigned operating agreement and accompanying email from Foertsch clearly demonstrate his admission that the parties are equal members of Bit Reactor and are merely seeking to create terms for their ownership of Bit Reactor and the relationship among them. As alleged in the Complaint and shown in the Motion to Disqualify, although Foertsch and Defendants' counsel acknowledged the ownership of Kelly on numerous occasions, Kelly's membership is not dependent on a written agreement of any type. This is also consistent with Defendants' acknowledgement that all that is required under Maryland law for an enforceable contract are "details indicating both parties' intention to be bound and mutual consideration."

Motion at 16. All of these things have been alleged to exist as is required at this stage of the case and there is no doubt that they do exist as a matter of fact.

A contract may be oral or written. *See Cty. Comm'rs of Caroline Cty. v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000). A contract may also be express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Dashiell*, 358 Md. at 94, 747 A.2d at 606).

In addition, an implied-in-fact contract, or an "implied contract," is "an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Maryland Cas. Co.*, 442 Md. at 706, 114 A.3d at 688. An implied-in-fact contract "is 'inferred from conduct of parties and arises where plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefore, and defendant, knowing such circumstances, avails himself of [the] benefit of those services.'" *Dashiell*, 358 Md. at 95, n.6, 747 A.2d at 606 n.6 (citation omitted); *see Mogavero v. Silverstein*, 142 Md. App. 259, 275, 790 A.2d 43, 52 (2002) ("An implied-in-fact contract is a 'true contract' and 'means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words.'"); *Slick v. Reinecker*, 154 Md. App. 312, 318, 839 A.2d 784, 787 (2003) ("'The term [implied in fact contract] only means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words.'") (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. 766, 774, 471 A.2d 1121 (1984)) (emphasis omitted) (bracketed words added in *Slick*).

Thus, an implied-in-fact contract "'refers to that class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. Despite the fact that no words of promise or agreement have been used, such transactions are nevertheless true contracts, and may properly be called inferred contracts or contracts implied in fact.'" *Mohiuddin v. Doctors Billing & Management Solutions, Inc.*, 196 Md. App. 439, 448, 9 A.3d 859, 865 (2010) (quoting 1 Richard A. Lord, Williston on Contracts, § 1.5, pp. 20-21 (1990)); *see State Construction Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449, 462-63 (D. Md. 2019) (observing that "an implied-in-fact contract is, for all intents and purposes, an 'actual contract'"). "Recovery on a contract implied in fact...is based on the amount that the parties intended as the contract price or, if that amount is unexpressed, the fair market value of the plaintiff's services." *Mogavero*, 142 Md. App. at 276, 790 A.2d at 53.

Maryland law is clear that "[T]here are different ways to prove that a contractual relationship exists. ... Traditional bilateral contract theory is one. Detrimental reliance can be another." *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 169, 674 A.2d 521 (1996).

> To resolve these confusions we now clarify that Maryland courts are to apply the test of the Restatement (Second) of Contracts § 90(1) (1979), which we have recast as a four-part test:
>
> > 1. a clear and definite promise;
> > 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
> > 3. which does induce actual and reasonable action or forbearance by the promisee; and
> > 4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enterprises, Inc.*, 342 Md. 143 at 166. "Thus, where a contract lacks formal consideration, an enforceable contract may nevertheless exist by virtue of the doctrine of detrimental reliance." *Braude v. Robb*, 255 Md. App. 383, 398, 279 A.3d 1153, 1162 (2022). *Pavel Enterprises* emphasized that detrimental reliance establishes a contractual relationship between the parties.

*Id.* at 534. Thus, it is not an alternative to contract; it is a contract. *See also Harford Co. v. Town of Bel Air*, 348 Md. 363, 704 A.2d 421, 430 (Md.1998) ("the undertakings in the 1969 agreement amount to 'a benefit to the promisor or a detriment to the promisee' sufficient to constitute 'valuable consideration'").

Judge Hollander of this court recently found a contract under the same approach in *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. CV ELH-21-2337, 2023 WL 2743361 (D. Md. Mar. 31, 2023).

> The Second Amended Complaint states a claim for promissory estoppel. It alleges that, based on SMG's acceptance of the deposit to reserve November 16, 2021 for the rally, in addition to plaintiff's prior experience hosting a rally at the Pavilion and the weeks it "spent communicating with SMG regarding the logistics of conducting the rally" (ECF 114, ¶¶ 13, 14), St. Michael's reasonably relied on a "clear and definite promise that [it] would be allowed to use the MECU Pavilion for the prayer rally on November 16, 2021." *Id.* ¶ 174. Further, the SAC asserts that SMG was aware that St. Michael's had begun "making arrangements with third-party vendors" for the rally. *Id.* ¶¶ 179–80. In addition, the SAC states that, based on the understanding that an agreement had been reached as to all material terms, and that a contract had been formed, St. Michael's "began publicly promoting the rally, resulting in thousands of reservations and the booking of over a dozen speakers" (*id.* ¶ 14), and that as a result of SMG's refusal to honor this agreement, St. Michael's "suffered considerable damages ... including added expenses of trying to coordinate the logistics of the rally on very short notice, increased travel expenses, a reduction in the size of the event, and reputational harm." *Id.* ¶ 172. Thus, the SAC alleges the facts necessary to support a claim for promissory estoppel.

*Id.* at *41.

In addition, although the parties must agree on the *essential* terms, *see Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007), they need not immediately define *all* terms. "'A contract is not rendered unenforceable merely because the parties do not supply every conceivable detail or anticipate every contingency that may arise.'" *Cnty. Comm'rs for Carroll Cnty. v. Forty West Builders, Inc.*, 178 Md. App. 328, 38, 13 A.2d 596 (2008) (quoting *Scheffres*

*v. Columbia Realty Co., Inc.*, 244 Md. 270, 285, 223 A.2d 619 (1966)). Moreover, "when parties disagree as to the existence or terms of an oral agreement, their conduct and intentions may be employed to determine any ambiguous and unknown provisions of the contract." *Braude v. Robb*, 255 Md. App. 383, 400-01, 279 A.3d 1153 (2022) (quoting *Son v. Margolius, Mallios, Davis, Rider & Tomar*, 114 Md. App. 190, 213, 689 A.2d 645 (1997), *rev'd in part on other grounds*, 349 Md. 441, 709 A.2d 112 (1998)); *Globe Home Improvement Co. v. McCarty,* 204 Md. 513, 517, 105 A.2d 216 (1954); *Weil v. Free State Oil Co.,* 200 Md. 62, 87 A.2d 826 (1952); *Snyder v. Cearfoss,* 187 Md. 635, 51 A.2d 264 (1947).

More importantly and perhaps yet to be considered relevant in this action, Maryland has long held that if a party had a hidden intent in his promise, it is of no consequence.

> Judge Learned Hand expressed it in this wise: 'A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.'

*Ray v. William G. Eurice & Bros.*, 201 Md. 115, 126–27, 93 A.2d 272, 278–79 (1952) (citations omitted). This Court has also recognized this aspect of the law. "As long as a contract's terms are unambiguous, a litigant's *ex post* account of its subjective intentions is irrelevant." *Matter of Bridge Watersports, LLC*, 656 F. Supp. 3d 553, 565 (D. Md. 2023), *aff'd sub nom. Bridge Watersports, LLC v. Tressler*, No. 23-1312, 2024 WL 837908 (4th Cir. Feb. 28, 2024) (quoting *United States v. Hartford Accident & Indem. Co.*, 168 F.Supp.3d 824, 834–35 (D. Md. 2016)).

And, of course, in situations disputing the existence or conflicting evidence as to its terms, it is for the finder of fact to determine if the contract existed and what were its terms. *Son,*

114 Md. App. 190, 213, 689 A.2d 645, 656.  It would not be appropriate to decide such things based on a Motion to Dismiss denying a contract.

In the present case, there are clear allegations supporting a contract that existed for the formation of Bit Reactor and equal ownership.  The  Complaint explains how the parties started the Company together to pursue the contract with EA.  The Complaint does not suggest that Foertsch undertook activities to develop and refine the pitch on his own, that he could have obtained the introduction to EA or have negotiated the contract without Kelly.   Foertsch is not a businessperson and only possesses the skills of a creative director.

Accepting all well-pleaded facts and inferences in Kelly's favor, as the Court must at this juncture, it is sufficiently plead that the agreement was formed when the three partners worked together, collectively pitched the game and secured an arrangement with EA.  All of these actions were acknowledged by Foertsch and he repeatedly identified Kelly as a "Co-Founder." Complaint ¶10.  This is an undeniable recognition that the activities were done as owners of the Company.  Foertsch also claimed in a public filings in both Texas and in California, respectively, that Kelly was "a governing person" and a "member." *See* Exhibit B.[5]  Further, as noted in the Motion to Disqualify, Kelly, like Foertsch were both parties to the settlement discussions and settlement agreement negotiated by Defendants' current counsel releasing Whittaker's ownership interest in the Company.

As noted above, should Foertsch wish to later contest his agreement or attempt to prove it did not exist, those arguments will have to wait until a point after which discovery has occurred.

---

[5]     "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), cert. denied, 565 U.S. 825 (2011).

Defendants' seek to support their arguments in their Motion to Dismiss by irrelevant references to previous decisions with full factual records and where the plaintiffs were found to not have demonstrated clear agreements. In making these premature arguments, Defendants ignore that Kelly fulfilled her promises as part of the Bit Reactor formation and actually undertook considerable activities supporting her agreement with Defendants which Foertsch has acknowledged, benefited from and breached long after the parties had jointly formed Bit Reactor.

No dispute can exist at this juncture that all of Kelly's alleged activities support good and valuable consideration under Maryland law. There is nothing indefinite about these activities, why they were undertaken, who was to benefit from them nor did Foertsch at any time reject Kellys efforts or otherwise note that no enforceable agreement existed between them.

## II.      Defendants are Wrong that The Statute of Frauds Bars Enforcement

As has been typical in its approach to its Motion, Defendants' argument in support of the Statute of Frauds takes an unreasonably narrow view of the contract and the law. Defendants argue that i) since a limited liability company has a perpetual existence, the contract cannot be performed within a year and ii) since the contract formed by the parties was to pursue the EA contract, it could not be performed within a year. Defendants are wrong on both counts.

Defendants confuse the existence of the contract not having a termination date with the concept that the contract could not be performed within a year. Foremost, Defendants ignore that the contract was consummated by the formation of Bit Reactor, which could have been performed within a year and was, in fact, performed within a year. Foertsch selected the entity as a limited liability company. The fact that the entity may have a perpetual existence does not mean that the contract to form the entity with Kelly could not be performed within a year; it was. In addition, the rule bars contracts which are impossible to perform within a year, not those

which are merely expensive to complete in a year. Cite? The game could have been completed as well.

In addition, even Defendants have to acknowledge that an oral contract that is otherwise invalid under the statute of frauds may be rehabilitated by the doctrine of part performance. *See Friedman & Fuller, P.C. v. Funkhouser*, 666 A.2d 1298, 1306-07 (Md. App. 1995) (disapproved of, on other grounds, by *Pavel Enterprises, Inc.*, 674 A.2d at 532 n.29 (Md. 1996)). There is no question here, as alleged in the Complaint, that the parties have been performing this agreement for several years thereby eliminating any notion that the Statute of Frauds prevents the enforcement of their agreement to jointly form Bit Reactor and share in its profits.

Similarly, the Statute of Frauds is satisfied once it is signed *or* acknowledged by the party to be charged. Among other places, Foertsch's signature and acknowledgement exists on the Articles of Organization, in his filings in other states and in the email sent with his proposed operating agreement. In fact, even Defendants' current counsel acknowledged the ownership interest as noted in the Motion to Disqualify. This defeats Defendants' Motion to Dismiss. In this case, there is no doubt that the documents executed by Foertsch, his emails and the actions of his counsel bound him to the oral contract which he now tries to cowardly avoid.

### III. Just as Defendants' Claims that There Was No Contract Fails, So Does Their Efforts to Dismiss the Breach of Fiduciary Obligations

Defendants concede that "Foertsch would owe Kelly fiduciary obligations only if she becomes an owner of Bit Reactor by way of the Purported Contract." Motion at 21. As argued above, the contract undeniably existed and she is an owner of Bit Reactor, was acknowledged by all parties, and was performed faithfully by Kelly. Defendants cannot hope to escape the breach which existed in this situation so easily. Among other places, Foertsch's fiduciary obligations stem from his position as the manager and officer of Bit Reactor.

Maryland has recognized that there are common duties shared by the managing member of an LLC to its members. *George Wasserman & Janice Wasserman Goldstein Family LLC v. Kay*, 197 Md. App. 586, 14 A.3d 1193 (2011) (managing members are agents and therefore owe fiduciary duties to LLC and to other members).  As noted above, the courts have also analogized the relationship of the general partner to the limited partner to be the same as between corporate directors and shareholders. *Della Ratta v. Larkin*, 382 Md. 553, 578-579, 856 A.2d 643 (2004); *Republic Properties Corp. v. Mission W. Properties, LP*, 391 Md. 732, 760, n. 15, 895 A.2d 1006 (2006).  This corporate relationship is recognized as a fiduciary relationship where the director has a duty to "maximize profit and a duty of candor." *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 347-351, 983 A.2d 408 (2009). These same fiduciary duties exist for majority shareholders to minority shareholders and include duties to not use their power for their own benefit and for a purpose adverse to the interests of the corporation and its stockholders. *Mona v. Mona Elec. Group, Inc.*, 176 Md. App. 672, 934 A.2d 450 (2005).[6]

Defendants' Motion hoping to deny his fiduciary obligations must be denied.

## IV.    Declaratory Relief is Properly Pled

Defendants argue that Count IV seeking declaratory relief must also be dismissed because it is not a cause of action but is only a remedy.  Defendants are wrong and misread the authorities to which they cite which focused on whether the Federal Declaratory Judgment Act provides an independent basis for jurisdiction.  Jurisdiction is not an issue here.

There is no serious contest of the applicability of the Act or that Kelly has adequately alleged all of the elements necessary for the Court to issue declaratory relief.  The Declaratory Judgment Act provides that "in the case of actual controversy within its jurisdiction," a district

---

[6]        Taxed as a C Corporation, Bit Reactor issues dividends to owners.

court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 USC 2201(a). Fed. R. Civ. P. 57 makes clear that the Federal Rules of Civil Procedure govern efforts to obtain declaratory relief. "These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."

Consistent with the applicability of declaratory relief as a remedy, this Court's Local Rules make clear that "[a]ny pleading that states a claim for relief shall set forth each count separately and provide a clear statement of the supporting facts for each count." Local Rule 103.1(c). That is precisely what has been accomplished here and Defendants cannot seek dismissal of the relief nor the Court's inherent power to exercise such a remedy.

> Proceedings under the Declaratory Judgment Act are governed by the same pleading standards that are applied in other federal civil actions. Thus, it is necessary for the plaintiff to state briefly the grounds upon which the subject matter jurisdiction of the district court depends, provide a short and plain statement of the claim on which relief may be granted, and include the demand for that relief.

Statement of Particular Matters—Declaratory Judgments, 5 Fed. Prac. & Proc. Civ. § 1238 (4th ed.). Defendants' effort to dismiss Count IV must be rejected.

## V. Maryland Recognizes a Cause of Action for an Accounting

Defendants are incorrect that Maryland has eliminated a cause of action for an accounting as alleged in Count V of the Complaint. Maryland has clearly recognized such actions in *Golub ex rel. Golub v. Cohen*, 138 Md. App. 508, 520, 772 A.2d 880 (2001) and *P.V. Properties, Inc. v. Rock Creek Village Associates Ltd. Partnership*, 77 Md. App. 77, 89, 549 A.2d 403 (1988). "An accounting may be had where one party is under an obligation to pay money to another based upon facts and records which are known and kept exclusively by the party to whom the

obligation is owed, or where there is a confidential or fiduciary relationship between the parties, and a duty rests upon the defendant to render an account." *P.V. Properties, Inc.*, 77 Md. App. at 89 (citing *Nagel v. Todd*, 185 Md. 512, 45 A.2d 326 (1946)) (citations omitted).

Kelly has presented a quintessential case for an accounting here. There is no operating agreement which could provide relief through such a structure. She is a member whose financial interests have been directly impacted by the managing member's fraud and other self-motivated actions. MD Code, Corps. & Assoc., § 4A-406 provides all members inspection rights.

> (a) A member may inspect and copy, in person or by agent, from time to time on reasonable written demand, for any purpose reasonably related to the member's membership interest:
> > (1) True and full information regarding the state of the business and financial condition of the limited liability company;
> > (2) A copy of the articles of organization and operating agreement and all amendments to the articles of organization and operating agreement;
> > (3) A current list of the names and last known business, residence, or mailing addresses of all members; and
> > (4) Other information regarding the affairs of the limited liability company as is just and reasonable for any purpose reasonably related to the member's membership interest.
>
> (b) Any member may inspect and copy, in person or by agent, a copy of the limited liability company's federal, state, or local income tax returns.

Kelly identified Foertsch's refusal to abide by these rights in her Complaint, ¶¶ 56-58.

> 56. In addition, under Md. Corps. & Assn Code Ann. §4A-406, Ms. Kelly, as a member of Bit Reactor, has the right to inspect and copy "True and full information regarding the state of the business and financial condition of the limited liability company" and "[o]ther information regarding the affairs of the limited liability company as is just and reasonable for any purpose reasonably related to the member's membership interest."
>
> 57. As alleged above, Foertsch has refused to provide information regarding the business and financial condition of Bit Reactor and has actually created and produced to third-parties bogus documents to misrepresent the ownership of the Company.

58. The only means of obtaining accurate financial information regarding the Company is by obtaining a full and accurate accounting and disclosure of all business and financial transactions of Bit Reactor.

These same allegations were contained elsewhere in the Complaint at ¶¶ 33, 35.[7]

In ordering an accounting, *P.V. Properties* referred to its ruling by citing *Anderson v. Watson*, 141 Md. 217 (1922). In *Anderson*, a group of coal miners sued their employer for an accounting of the coal they had mined. The employer had the exclusive means of weighing the coal. The court held that because the coal miners were obliged to rely on the good faith of their employer in properly weighing the coal, a fiduciary and confidential relationship was created. Accordingly, an accounting action existed. The *Anderson* court reasoned:

> In this case the complainants do not know how many cars of coal they mined, nor the rate of compensation agreed upon from time to time for their labor, and until they receive that information they cannot properly present their claim in a court of law.
>
> Nor can there be any real question that there was a *fiduciary and confidential relation between the parties to this proceeding.* The coal which measured the compensation to be paid to the men who mined it was weighed by the company on its own scales and by its own agents, out of the presence of the miners, who were, by the necessities of the case, precluded from witnessing the operation of weighing, and who were as a practical matter obliged to rely on the good faith of the company. Under such circumstances the miners naturally and necessarily trusted and relied upon the company's good faith, and the company assumed the duty of dealing fairly with them. For these reasons, in our opinion, the complainants are entitled to the accounting prayed in their bill.

*P.V. Properties, Inc.*, 77 Md. App. at 90 (citing *Anderson*, 141 Md. at 235) (emphasis in original).

The *P.V. Properties* court found that P.V. Properties had a fiduciary relationship with appellee, stating that

> [Appellee] maintains and exclusively controls the records which document its expenses. P.V. is forced to rely on the good faith and fair dealing of the landlord in assessing the charges. Therefore, under these circumstances, a confidential and

---

[7]    In fact, Kelly made a formal demand consistent with the statute and Foertsch refused to produce any documents.

fiduciary relationship exists between the parties. A confidential relation is not limited to cases of guardian and ward, attorney and client, and principal and agent, but exists in every case where confidence is reposed by one person and accepted by the other.

*Id.* at 91. (citing *Johnson v. Bugle Linen Service*, 191 Md. 268, 275-76 (1948).

There is no question that actions for accounting still exist in Maryland law. Given the fiduciary and other obligations of Foertsch to Kelly, an accounting is appropriately ordered and the only means through which Kelly can obtain full relief consistent with her Maryland statutory rights and her rights as determined by Maryland's appellate courts.

## VI. Unjust Enrichment and Quantum Meruit Relief are Appropriately Pled

In light of the allegations of facts in the Complaint, little question can continue to exist that there is an enforceable agreement whereby Kelly is an equal owner of Bit Reactor with Foertsch. Consistent with the rules for pleadings, Kelly is also entitled to plead in the alternative that she is also entitled to quasi-contractual recovery. Not denying this possibility, Defendants raise two objections to the quasi-contractual claims which are 1) that Kelly has not alleged she conferred any benefit on Defendants; and 2)the claims are barred by the statute of limitations. Neither of these provide any escape for Defendants.

A contract implied-in-law, known as a "quasi-contract," is a "[l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *Maryland Cas. Co.*, 442 Md. at 707, 114 A.3d 676 at 689 (emphasis and citations omitted); *see AAC HP Realty, LLC v. Bubba Gump Shrimp Co.*, 243 Md. App. 62, 70-71, 219 A.3d 99, 104 (2019); *Mohiuddin*, 196 Md. App. at 449, 9 A.3d at 865 (quoting Restatement (Second) of Contracts, § 4 (1981)); *Dashiell*, 358 Md. at 96-97, 747 A.2d at 607 (Unjust enrichment is a remedy "'to provide relief for a plaintiff when an enforceable contract

does not exist but fairness dictates that the plaintiff receive compensation for services provided.'") (internal citation omitted).

After reviewing numerous Maryland cases addressing both varieties of quantum meruit relief, the Court in *Mogavero* distilled the following principles:

> if specific services are requested by the defendant, the contract is treated as one implied in fact and recovery is allowed for the reasonable value of the plaintiff's services; but if there is no meeting of the minds as to what services are to be rendered, the contract is treated as one implied in law, where the measure of damages is the amount, if any, of the defendant's gain – not the reasonable value of plaintiff's services.

*Id.* at 281. In *Mogavero*, the appellate Court reviewed the situation after a trial was held. The Court agreed that the Plaintiff could pursue quantum meruit relief under a quasi-contractual theory, however, it concluded that the Plaintiff in that case was not entitled to any relief because he offered no evidence to show a benefit to the defendant. *Id.* at 282.

In addition, Maryland does not require proof of a quantifiable benefit to the defendant when quantum meruit relief is pursued under an implied-in-fact contract theory. Rather, the plaintiff must show that the conduct of the parties demonstrates that they reached a meeting of the minds relative to the services that the defendant desired the plaintiff to perform, and that the plaintiff performed the services, but was not compensated, in whole or in part. *See, e.g., Hirsch v. Yaker*, 226 Md. 580, 582 (1961) (builder awarded damages for "the fair and reasonable value of the work done and materials installed" during a kitchen remodel as quantum meruit relief where the court credited the builder's testimony that he was directed to perform the work); *Kantsevoy v. LumenR, LLC*, 301 F. Supp. 3d 577, 598 (D. Md. 2018) (plaintiff stated a claim for which relief could be granted in an implied-in-fact contract theory of quantum meruit because he alleged he provided services to defendant with the expectation that he would be paid consistent with the parties' prior course of dealing). "A successful unjust enrichment claim serves to 'deprive the

defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'" *Hill v Cross Country Settlements, LLC*, 402 Md. 281, 295–96, 936 A.2d 343 (2007); *see also Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151, 757 A.2d 108, 113 (2000).

Kelly is not required to prove her case and all damages in her Complaint. Putting aside the premature nature of Defendants' argument, Kelly's allegations clearly identified benefits conferred on Defendants from refinements to the pitch deck, the introduction to EA which Defendants were unable to obtain, the development of the budget and negotiation of a contract with EA, her efforts to build out her infrastructure of Bit Reactor and her continuing work to support development and shipment of the game. There is no question in this case that, as an alternative to her breach of contract action, Kelly has adequately alleged a cause of action where such implied-in-law relief is just an appropriate at this juncture.

Defendants argument on the applicability of the statute of limitations is equally unpersuasive. The statute of limitations begins on the point when Defendants refuse to pay for the services conferred not from the date the services were provided. As alleged in the Complaint, Foertsch's actions only started in 2023, after Foertsch and Kelly executed a settlement agreement for Whittaker's exit. Complaint ¶17. Only after this point is when Foertsch began to deny Kelly any just compensation for the benefits of her services and began claiming he was the 100% owner of Bit Reactor. Not until this moment was Kelly's recovery for her efforts threatened.

As the Court is well aware, Maryland follows the discovery rule for the statute of limitations. "Recognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an

injury," Maryland has adopted the so-called discovery rule to determine the date of accrual. *See Bank of New York v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004); *Frederick Road Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 95, 756 A.2d 963, 973 (2000). "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 167, 857 A.2d 1095, 1104 (2004).

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 444, 749 A.2d 796, 801 (2000) ), *aff'd*, 495 F. App'x 350 (4th Cir. 2012); *see Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 75, 904 A.2d 511, 521 (2006). A plaintiff is on inquiry notice when she "possesses 'facts sufficient to cause a reasonable person to investigate further, and ... a diligent investigation would have revealed that the plaintiffs were victims of ... the alleged tort.' " *Dual Inc.*, 383 Md. at 168, 857 A.2d at 1104 (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448–49, 550 A.2d 1155, 1159 (1988)) (alterations in original). Inquiry notice must be actual notice, either express or implied. *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677, 681 (1981).

Like the discovery rule, where a confidential relationship or a fiduciary relationship exists, the ordinary duty of one to make inquiry to discover the existence of wrongdoing is relaxed. The confiding party is under no duty to make inquiry to discover that the confidential relationship has been breached. "The 'continuation of events' theory tolls the statute of limitations during the existence of a fiduciary relationship between the parties." *MacBride v. Pishvaian*, 402 Md. 572, 937 A.2d 233 (2007). When a confidential relationship or fiduciary

duty exists at the time the plaintiff ordinarily may be charged with having knowledge of the existence of wrongdoing, he or she may be excused from the duty of making inquiry. *See Desser v. Woods*, 266 Md. 696, 296 A.2d 586 (1972). Thus, the accrual date of the statute of limitations is extended until such actions are uncovered. *Maltas v. Maltas*, 197 F. Supp. 2d 409 (D. Md. 2002), *rev'd on other grounds, remanded*, 65 F. App'x 917 (4th Cir. 2003) (if a confidential relationship exists, statute of limitations will be tolled if (1) the relationship continues unrepudiated, (2) there is nothing to put the injured party on inquiry, and (3) the injured party cannot be said to have failed to use due diligence in detecting fraud).

Like Defendants here, in *Herring v. Offutt*, 266 Md. 593, 295 A.2d 876 (1972), the defendant accused of breaching its partnership obligations sought to have the case dismissed based on the statute of limitations. The Maryland Court of Appeals refused finding that the issue was better left for the trier of fact because "[w]hether a plaintiff's failure to discover his cause of action was due to his lack of diligence, or to defendant's concealment of his wrong, is ordinarily a question for the trier of fact." *Id.*, 266 Md. at 599. The court refused to impose a duty on the limited partners to monitor and discover the general partners' wrongs.

> 'Where a confidential relationship exists between the parties, failure to discover the facts constituting fraud may be excused. In such a case, so long as the relationship continues unrepudiated, there is nothing to put the injured party on inquiry, and he cannot be said to have failed to use due diligence in detecting the fraud. This is for the reason that a confidential relationship by its nature gives the confiding party the right to relax his vigilance to a certain extent and rely on the good faith of the other party and his duty to disclose all material facts, and therefore the confiding party has no duty to make inquiries until something occurs to make him suspicious.
>
> Similarly, an agent sued for fraud cannot set up that the principal should have suspected him.

*Herring*, 266 Md. at 600 (citations omitted).

As the Court of Appeals has explained, when the parties are in a fiduciary relationship, "[t]he confiding party… is under no duty to make inquiries about the quality or bona fides of the services received, unless and until something occurs to make him or her suspicious." *Fredrick Rd. Ltd. Pshp. V. Brown & Sturm*, 360 Md. 76, 98 (2000). "[W]hether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by the exercise of due diligence, is ordinarily a question of fact for the jury." *Id.* at 96 (quoting *O'Hara v. Kovens*, 305 Md. 280, 294-295, 503 A.2d 1313 (1986).

Not only was there no reason to question things until 2023 when Foertsch started to act aggressively once Whitaker was gone from Bit Reactor, representations by Foertsch and his current counsel in the fall of 2023 also gave no indication to Kelly that Foertsch was planning anything or otherwise breaching his obligations to her and intended to no longer compensate her for the services provided. None of these things came to light until 2024 and reached a tipping point when Defendants, through current counsel, sent a letter mere months ago stating that she was not a member. This was the first occasion on which Defendants took this position either breaching or anticipatorily breaching the obligation to compensate Kelly for her efforts.

Finally, Defendants' arguments that Kelly was compensated for these services as COO attempts to insert factual findings with no evidence concerning the amounts Kelly was paid, whether those payments equated to the value of her total services for which she performed and whether she agreed that the COO salary would compensate for those services she provided. There is no means through which the Court can make this factual leap of faith at this juncture.

### VII.    Plaintiff Clearly Pled Actionable Fraud Against Foertsch in Count VI

Rule 9(b) serves several salutary purposes:

First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted). By its plain text, Rule 9(b) permits general averment of aspects of fraud that relate to a defendant's state of mind. And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

Consistent with other portions of Defendants' Motion, this argument is replete with snippets from cases stating that fraud must be declared with particularity without any mention of the holdings in those cases. Defendants then conclude that they have no idea what fraud they are alleged to have committed against Kelly. This conclusion by Defendants is only possible by a tortured and hopeful reading of the Complaint.

The Complaint clearly lays out the elements of a fraud claim in the alternative against Foertsch who promised equal ownership with Kelly of Bit Reactor which he had no intention of fulfilling. In addition to making this promise, he induced Kelly to undertake numerous actions in working with Foertsch including revising their pitch, arranging for a meeting with EA, negotiating with EA, and then building the company and its infrastructure with Foertsch. Kelly even worked with Defendants and their current counsel to pay Whittaker for a release of any further claims which Whittaker had of ownership in Bit Reactor against Foertsch and Kelly.

Kelly undeniably relied on Foertsch promises of shared ownership in the Company as she undertook each of these activities with him and continued to be further induced based on

Foertsch's representations in writing that they were equal members of Bit Reactor. Accepting Foertsch's current position in claiming 100% ownership of the Company, that Kelly is not an owner of the Company and he had no intention of her being an owner, makes fraud an easy and natural conclusion.

If no contract to start and be an owner of Bit Reactor existed as Foertsch repeatedly represented to her and to others and Foertsch had no intention to honor his words and commitments made to Kelly (as he has suggested in his Motion to Dismiss), he undeniably committed fraud against her manipulating her into helping him land the contract and then unabashedly using her skills with no intention of honoring his promises. This is the very definition of fraud under Maryland law.

> To prevail on a claim for fraud, a plaintiff must prove by clear and convincing evidence that '(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.'

*White v. Kennedy Krieger Inst., Inc.*, 221 Md. App. 601, 635, 110 A.3d 724 (2015) (emphasis omitted) (quoting *Hoffman*, 385 Md. at 29). "A plaintiff satisfies the elements of false representation and knowledge of falsity where circumstantial evidence establishes that a defendant makes a promise without intending to perform." *Dynacorp Ltd. v. Arametel Ltd.*, 208 Md. App. 403, 458, 208 A.2d 403 (2012) (quoting *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 94, 159, 838 A.2d 397 (2003) ("[F]raudulent intent can be inferred from circumstantial evidence")). A "defendant's deliberate misrepresentation of his existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud, may form the basis for an action in fraud or deceit." *Alleco Inc. v. Harry & Jeanette*

*Weinberg Found., Inc.*, 340 Md. 176, 197, 665 A.2d 1038, 1048 (1995) (citations omitted). And, a "speaker's statement of what he or she will do in the future may constitute a representation of the speaker's present intention, which may support an action for negligent misrepresentation." *Gross v. Sussex Inc.*, 332 Md. 247, 272, 630 A.2d 1156, 1169 (1993) (citing *Weisman v. Connors*, 312 Md. 428, 454–58, 540 A.2d 783, 796 (1988)).

More importantly, in the case of *FZata* relied upon by Defendants here, the appellate court sustained the plaintiff's alternative theory of fraud including the judgment rendered in her favor which was similar to Foertsch's actions alleged here. Alternatively, to claims of being an owner which plaintiff could not prove, the judgment on his fraud claims against the defendant were sustained because the defendant had made misrepresentations inducing plaintiff to believe he was an investor and owner of the company and to continue to contribute to it.

> In this case, Dr. Guan's claim of fraud was based on a series of communications with Dr. Yang. Dr. Guan testified that, in January 2016, he asked Dr. Yang for documented proof of his ownership interest in FZata. He testified that, in response, Dr. Yang emailed him the document titled "ATA LLC Company's By-law." That document identifies Dr. Guan as a shareholder owning 1,875,000 shares of "ATA," or 15 percent of the total shares. One month before sending the ATA bylaws, Dr. Yang had already filed articles of cancellation terminating the company with the name "ATA, LLC."

> Dr. Guan testified that, after receiving the ATA bylaws, he asked Dr. Yang why the document used the name "ATA" instead of "FZata." Dr. Guan testified that, in response, Dr. Yang "assured" him that "ATA and FZata [were] the same, same companies." As stated in Dr. Guan's brief, his theory was that "Dr. Yang falsely informed [him] that ATA's bylaws were in fact FZata's bylaws." . . .

> In short, the defendants have not identified any basis to conclude that Dr. Yang is entitled to a judgment in her favor on the claim of fraud. The verdict finding Dr. Yang liable for fraud will stand.

*FZata*, *61, 65-66.

Alternatively, to claiming he has no idea how he committed this fraud on Kelly, Foertsch confuses himself and repeats his argument that he could not have defrauded Kelly because there

was no definitive contract or justifiable reliance on his words. This is absurd at its best. First, no contract is necessary to defraud someone. At a minimum, fraud is an alternative to the contract's existence. Second, as argued above, only by ignoring the allegations of the Complaint can Foertsch argue his inducements to get Kelly to do the things alleged were "too vague and indefinite to be enforced and cannot support a fraud claim." Actions over a span of three years by Foertsch and his current counsel as alleged in the Complaint are more than sufficient to demonstrate fraud.

The Motion to Dismiss Count VI should be denied.

## Conclusion

For the reasons stated above, Defendants' Motion to Dismiss must be denied.

/s/ Donald J. Walsh
Donald J. Walsh (Bar #09384)
Marie Ignozzi (Bar #29762)
Stacey Torres (Bar #30944)
RKW, LLC
10075 Red Run Blvd., Suite 401
Owings Mills, MD 21117
443-379-4011
dwalsh@rkwlawgroup.com
mignozzi@rkwlawgroup.com
storres@rkwlawgroup.com