# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# (BALTIMORE)

| | | |
|---|---|---|
| ALISON KELLY | * | |
|    Plaintiff, | * | |
| v. | * | Civil Action No. 1:24-cv-02161-JKB |
| GREGORY FOERTSCH, et al | * | |
|    Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY PAUL EVELIUS AND WRIGHT, CONSTABLE & SKEEN, LLP AS DEFENSE COUNSEL

Plaintiff, Alison Kelly, by and through her undersigned counsel, pursuant to Fed. R. Civ. P. 7(b) and the Maryland Rules of Professional Conduct, files this Memorandum of Points and Authorities in support of her Motion for Disqualification of Defense Counsel due to existing conflicts of interest and because Paul Evelius is a fact witness with personal knowledge.

This is an action for breach of contract, breach of duties owed to Plaintiff by Defendants, and for declaratory relief confirming that Alison Kelly ("Kelly") is a fifty percent member of Bit Reactor, LLC, ("Bit Reactor" or "Company"), which she and Gregory Foertsch ("Foertsch") started. Despite the undisputed trail of joint efforts, ownership, and successes which Foertsch could not have obtained on his own, Foertsch has forced Kelly out from the Company, denied her access to its books, and has unilaterally declared himself to be the sole owner of Bit Reactor. Foertsch has also taken efforts to retain undeserved financial benefits for himself and embarked on unchecked efforts to expel Kelly through oppressive and controlling tactics in breach of his obligations to Kelly and Bit Reactor.

Kelly and Foertsch are the two remaining founding members of Bit Reactor, a computer game and software development company. Since sometime in 2021, Bit Reactor's corporate counsel was Paul Evelius, Esquire ("Evelius") and the law firm Wright, Constable & Skeen, LLP ("WC&S"). Evelius and WC&S also represented Bit Reactor, Kelly, and Foertsch in a dispute with Tom Whittaker where he claimed he was a founding member who had a one-third interest in Bit Reactor, equal to that Kelly and Foertsch, and he demanded that Foertsch, Kelly and Bit Reactor pay him for this membership on his exit from the Company. In the process of handling the Whittaker matter, Evelius regularly communicated with Kelly and Foertsch about the allegations and their responses. That matter was ultimately settled by Evelius in late 2023 on behalf of Foertsch, Kelly, and Bit Reactor.

After Kelly asserted her claims regarding Foertsch's breach of his obligations to her and the Company, but before filing suit, Evelius identified that he and WC&S represented Bit Reactor *and* Foertsch individually. In response, Kelly objected and demanded that Evelius and WC&S not represent Foertsch personally since doing so resulted in a clear and undeniable conflict of interest given Evelius' past representation of Kelly and his continued representation of the Company. Kelly made clear she was unwilling to waive any such conflict. However, Evelius and WC&S refused to cease representing Foertsch, ignored Kelly, and continued their representation of Foertsch personally in this dispute between the two owners.

In addition to his conflict of interest, Evelius is also a witness with personal knowledge of relevant, material facts since, during and throughout the course of his representation of Bit Reactor as its corporate counsel and in the Whittaker dispute, Evelius was directly involved in communications with Kelly and efforts taken on behalf of Kelly and the Company regarding

2

third parties and Kelly's ownership interest in Bit Reactor. Evelius is also witness to actions undertaken by Foertsch and others at the Company toward Kelly.

Despite demand and the evident conflicts, Evelius and WC&S refuse to voluntarily withdraw as defense counsel. In response to the Complaint she filed, Evelius and WC&S entered their appearance on behalf of Bit Reactor and Foertsch and filed a Motion to Dismiss.[1] It is clear that defense counsel are in violation of the Maryland Rules of Professional Conduct and given the prevalence of known and unavoidable conflicts, coupled with Evelius having personal knowledge of relevant facts, defense counsel must be disqualified from further representation of Defendants in this action.

## STATEMENT OF FACTS

Bit Reactor is a company which develops computer games and software. It has contracted with a publisher to design and build a computer game based on the movie franchise, Star Wars, and has other game ideas in development. Bit Reactor was originally started by four individuals, with Kelly and Foertsch being the only two remaining members. Kelly and Foertsch have known each other since, approximately, 2004. (Complaint, ¶¶ 2-3).

In or around 2019, Bit Reactor was formed by Kelly and Foertsch along with two other individuals. In 2022, the only other remaining founder, Tom Whittaker ("Whittaker"), pursued a dispute against Kelly, Foertsch, and Bit Reactor for a severance package and buy-out of his interest in Bit Reactor. Whittaker retained counsel from the law firm of Kramon & Graham, P.A., to represent him. (Complaint, ¶ 16). Whittaker's claims are identified by his counsel in the letter attached as Exhibit A. Kelly and Foertsch retained Bit Reactor's corporate counsel, Paul

---

[1] Kelly has contemporaneously filed her Response to Defendants' Motion to Dismiss with this Motion to Disqualify.

Evelius and Wright, Constable & Skeen, LLP, to represent them personally in response to Whittaker's claims.

Throughout and during this dispute that transpired over the course of 2022 and 2023, Evelius communicated directly with Kelly regarding, among other things, the formation of Bit Reactor and interactions of the various owners, including her, in Bit Reactor. Specifically, Evelius and Kelly had emails, phone calls, and meetings, in which Evelius openly recognized that Kelly was one of the owners of Bit Reactor and he was defending her interest against the claims of Whittaker. (Exhibits A-G). Similarly, Foertsch openly recognized Kelly as an owner of the company in his communications. (Ex. A, B, C, E, & G).

During Evelius' joint representation of Kelly and Foertsch in the ownership dispute with Whittaker, he had the following communications, among others, directly involving Kelly:

- April 29, 2022 email from Evelius to Foertsch and Kelly itemizing points of discussion Evelius had with Whittaker's counsel. In pertinent part, Evelius asks Kelly and Foertsch to "strategize about our position," clearly identifying Foertsch's and Kelly's position taken in response to Whittaker's claims for a one-third interest in Bit Reactor. (Exhibit A).

- May 3, 2022 email from Foertsch to Evelius and Kelly responding to Evelius' April 29, 2022 email. Foertsch does not dispel any notion that Kelly was part of their collective efforts or an owner. (Exhibit A).

- May 17, 2022 email from Evelius to Kelly and Foertsch passing along an email from Whittaker's counsel, Ezra Golloghy, Esq., on the ownership issue and noting that Evelius "will report back to you." (Exhibit B).

- May 17, 2022 email from Foertsch to Evelius and Kelly attaching a copy of Bit Reactor's draft Operating Agreement which identified the "four founders" one of whom was Kelly. (Exhibit B).
- May 27, 2022 email from Evelius to Foertsch and Kelly regarding Whittaker's settlement proposal and asking for a phone call with them to discuss their response. (Exhibit C).
- July 8, 2022 letter from Ezra Gologhy, Esq., Kramon & Graham, to Paul Evelius. The correspondence was a settlement proposal intended to resolve all of Whitaker's claims against Kelly and Foertsch. (Exhibit D).
- June 16, 2023 email from Evelius to Foertsch and Kelly and Foerstch emailed response to Evelius and Kelly in which Foertsch, as part of a broader communication about responding to Whittaker's settlement demand, states, in pertinent part, that "Allison and I did never (sic) verbally agreed to." (Exhibit E).
- October 2023 – Executed Settlement Agreement as to Whittaker's claims, signed by Kelly and Foertsch individually and by Foertsch on behalf of Bit Reactor, which Evelius edited and revised on behalf of all three of his clients. (Exhibit F).
- Emails from March 2022 between Evelius, Kelly, and Foertsch regarding the preparation of the draft severance agreement with Whittaker. (Exhibit G).

In addition, WC&S issued at least three invoices for professional services rendered to Bit Reactor, Foertsch, and Kelly. On November 14, 2022, Invoice # 158787 was sent to Bit Reactor and itemized several entries identifying Kelly as a person who communicated with Evelius. Invoice #173293 dated August 25, 2023, similarly, denotes several billing entries in which Kelly is the person with whom Evelius communicated. Lastly, an invoice dated March 13, 2024, (no

corresponding invoice number noted) was sent to Bit Reactor confirming communications with Kelly regarding the settlement agreement with Whittaker. Copies of the WC&S invoices are attached in Exhibit H.

## LEGAL STANDARD

In a motion to disqualify opposing counsel, the moving party must identify a specific violation of the Rules of Professional Conduct, and if the court finds there was a violation, it is within the Court's discretion to impose disqualification as a sanction. *Klupt v. Krongerd*, 126 Md. App. 179, 203 (1999). Under Local Rule 704, federal courts apply the MRPC as they have been adopted by the Maryland Court of Appeals. *Stratagene v. Invitrogen Corp.,* 225 F.Supp.2d 608, 610 (D.Md.2002). As this court explained in *Stratagene*:

> A motion to disqualify is a 'serious matter,' which must be decided on a case-by-case basis. This is so because two significant interests are implicated by a disqualification motion: 'the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community.' Nevertheless, 'the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings.' Thus, this court must not weigh the competing issues 'with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification.'
>
> Because disqualification necessarily results in the drastic result of a party losing its freely-chosen counsel, the movant "bear[s] 'a high standard of proof to show that disqualification is warranted.'"

*Id.,* at 610 (quoting *Zachair, Ltd. v. Driggs*, 965 F.Supp.741, 750 (D.Md. 1997) (Internal citations omitted).

"[D]isqualification at the urging of opposing counsel is permitted only 'where the conflict is such as to clearly call into question the fair and efficient administration of justice.'" *Balt. City v. Barnhart*, 201 Md. App. 682, 711-12 (2011). Disqualification has been held appropriate when opposing counsel gain unfair, tactical advantages from a party's privileged materials and work

6

product. *Klupt,* 126 Md. App. at 203. In *Klupt*, the trial court granted the motion for disqualification for having found multiple ethical violations, one of which was that the lawyer was a witness and knew he would likely be called as one, making him aware of his potential conflict in undertaking the representation. *Id*., at 206-08.

I. **EVELIUS AND WC&S MUST BE DISQUALIFIED DUE TO UNAVOIDABLE CONFLICTS OF INTEREST WHICH KELLY WILL NOT WAIVE.**

It is undeniable that during the dispute with Whittaker, Evelius and WC&S (collectively referred to "Defense Counsel") represented Bit Reactor, LLC, Greg Foertsch, and Allison Kelly. The nature of the dispute was whether Whittaker had a one-third interest in Bit Reactor since he, along with Foertsch and Kelly, were three of the four founding members.[2] That dispute, which was initiated in 2022, transpired over the course of, approximately, 18 months, until the parties reached a settlement agreement in October 2023. During that time frame, Kelly had ongoing communications with Evelius that related to, among other things, her interest in and role at Bit Reactor.

Evelius clearly communicated with Kelly and Foertsch via email and was undertaking representation that incorporated their personal interests in addition to that of the Company. Indeed, he expressly notes his communications with Whittaker's counsel were to advocate for "our position," indicative of Kelly's and Foertsch's joint interests. Given that this dispute directly involves Kelly's ownership claims which Foertsch is now denying, there is no doubt that Defense Counsel acquired specific knowledge from their prior representation of Kelly which renders Evelius a witness in this action and which could be utilized against Kelly. Ignoring Foertsch's own obligations, had Foertsch informed Evelius that Foertsch did not believe Kelly

---

[2] The fourth founder had earlier withdrawn from Bit Reactor.

had an interest in the Company, Evelius had fiduciary obligations to alert Kelly and to withdraw from further joint representation.

The Maryland Rules of Professional Conduct clearly prohibit an attorney from representing a client when there is a conflict of interest. Md. Rule 19-301.7 ("an attorney *shall not* represent a client if the representation involves a conflict of interest." (emphasis added)). "A conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client, a former client or a third person or by a personal interest of the attorney." *Id*.

Undersigned counsel identified and objected to Evelius' representation of Foertsch for months before filing this action. On May 9, 2024, a letter was sent to Foertsch that Evelius could not represent Foertsch individually as Evelius was corporate counsel. It was further noted that retaining new counsel for Foertsch should not be paid out of the Company's assets. On May 9, 2024, another letter was sent to Evelius confirming that Kelly would not waive any conflict arising from Evelius' choice to represent Foertsch. Those requests were ignored.

In *Attorney Grievance Commission of Maryland v. Siskind*, 401 Md. 41 (2007), the then-Maryland Court of Appeals laid out the analysis for such situations:

> The pertinent consideration here is whether Respondent's previous representation of 101 Charles is "substantially related" to the contract action Respondent filed against 101 Charles on behalf of TCL. As we said in *Gatewood,* " 'substantially related' embraces consideration of circumstances where the same issue is litigated, albeit for a different client, if there is a substantial risk that confidential communications between the attorney and his or her former client may be disclosed or utilized in a material manner prejudicial to the former client." 388 Md. at 544, 880 A.2d at 332–33.
>
> By operation of law, Respondent is assumed to possess confidential information pertaining to 101 Charles because he served as the entity's attorney. *Buckley v. Airshield Corp.,* 908 F.Supp. 299, 306 (D.Md.1995) (quoting *Tessier v. Plastic*

8

*Surgery Specialists, Inc.,* 731 F.Supp. 724, 731 (E.D.Va.1990)) ("It is well settled that once an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter."). This presumption arises in the present case because of the level of Respondent's involvement with 101 Charles's affairs. Respondent's intimate involvement in the preparation of various legal and business documents relating to 101 Charles, from the moment of its inception until the transaction which made Zokaites its sole owner, demonstrates that Respondent possessed significant knowledge of its affairs, arguably more than anyone. His guiding hand was involved in every legal transaction affecting 101 Charles. He recounted detailed information regarding the entity for purposes of this and other litigation. It is beyond reasonable contention that Respondent was equipped with confidential information bearing on the contract action he initiated against his former client. Further, Respondent's recall, for purposes of his defense at the hearing on this disciplinary action, of details relating to the transactions affecting 101 Charles supports the notion that such information still resided within Respondent's memory at the time he filed suit against his former client.

\* \* \*

Respondent stakes out an alternative position where he argues that any confidential information he may have attained by virtue of formerly representing both 101 Charles and TCL may be wielded against 101 Charles in a subsequent suit against it by TCL as represented by Respondent. This position purportedly is supported by a principle of law known variably as the "common interest doctrine" or the "joint representation doctrine." As this doctrine goes, confidential information divulged by co-clients to a shared attorney loses its confidential nature when litigation arises between the former co-clients as the result of a breakdown in their common interest. *See In re Matter of a Grand Jury Subpoena,* 406 F.Supp. 381, 393 (S.D.N.Y.1975); *see also Hillerich & Bradsby v. MacKay,* 26 F.Supp.2d 124, 127 (D.D.C.1998); *Opus Corp. v. IBM Corp.,* 956 F.Supp. 1503, 1506 (D.Minn.1996); *Polycast Tech. Corp. v. Uniroyal, Inc.,* 125 F.R.D. 47, 50 (S.D.N.Y.1989). Respondent reasons that, because the information he attained in the process of representing both TCL and 101 Charles underwent the above-mentioned transmogrification from confidential to non-confidential when TCL initiated a suit against 101 Charles, the matters are no longer substantially related. Accordingly, without a substantial relationship between the previous concurrent representation and the contract claim, any utilization by him of information gained from the concurrent representation would not present a conflict of interest. The argument is clever, but incorrect.

\* \* \*

The U.S. Court of Appeals for the Fifth Circuit was presented with an argument similar to Respondent's in an attorney disqualification case, *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168 (1979). *Brennan's Inc.* involved a dispute between two camps of a federated chain of family-run restaurants spread

9

across various Southern states. 590 F.2d at 170. Prior to the dispute, all of the family members were stockholders and directors in the plaintiff corporation, which controlled the New Orleans branch of the restaurant chain, and some were stockholders and directors for the defendant corporations controlling other chain locations in Texas, Georgia, and other parts of Louisiana. *Id.* For a period of approximately two years, an attorney named Wegmann served as general counsel for the family businesses. *Id.* In that time, he prosecuted the applications for federal registration of several service marks. *Id.* A later rift in the family caused the division of the restaurants into two camps and Wegmann decided to continue his representation of the defendants and severed his connections to the plaintiff. *Id.* Subsequent to the division of the several family restaurants among the feuding family members, a legal dispute arose over the use of the service marks registered in the plaintiff's name. *Brennan's, Inc.,* 590 F.2d at 170-71. Wegmann represented the defendant corporations in the suit filed by his former client as plaintiff and submitted a counterclaim. *Brennan's, Inc.,* 590 F.2d at 171. The plaintiff moved to disqualify Wegmann based on a conflict of interest, which motion the trial court granted. *Id.* The corporate defendants appealed that ruling, arguing that the joint representation prevented the formation of any confidences between the parties and Wegmann, thus obviating for Wegmann any ethical duty not to represent the defendants against his former client. *Id.*

The *Brennan's, Inc.* court rejected the defendants' argument. The court began by reciting the familiar prohibition against representing any interest materially adverse to that of a former client when the matters are substantially related, a rule premised on the presumption that the former representation involved the disclosure of the client's confidences. *Id.* Contrary to the defendants' assertion that such a presumption does not arise in joint representation scenarios, the court noted that "[t]he fundamental flaw in defendants' position is a confusion of the attorney-client evidentiary privilege with the ethical duty to preserve a client's confidences." *Brennan's, Inc.,* 590 F.2d at 172. "[T]he ethical duty is broader than the evidentiary privilege," encompassing the protection not only of confidential information, but "all knowledge acquired from client." *Id.* The court stressed the fiduciary duty that is formed when a client places his or her trust in an attorney and the obligation not to betray that trust. "A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the client in the same matter." *Id.* Finally, the court opined that "[t]he need to safeguard the attorney-client relationship is not diminished by the fact that the prior representation was joint with the attorney's present client." *Id.*

Several jurisdictions have acknowledged the wisdom of the reasoning in *Brennan's, Inc. See, e.g., Exterior Sys., Inc. v. Noble Composites, Inc.,* 210 F.Supp.2d 1062, 1071–72 (N.D.Ind.2002); *Lawyer Disciplinary Board v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850, 861 (1995); *X Corp. v. Doe,* 805 F.Supp. 1298, 1307–08 (E.D.Va.1992); *Prisco v. Westgate Entm't, Inc.,* 799 F.Supp. 266, 270 (D.Conn.1992); *Koch v. Koch Indus.,* 798 F.Supp. 1525, 1535 (D.Kan.1992); *Anchor Packing Co. v. Pro–Seal, Inc.,* 688 F.Supp. 1215, 1217–18

(E.D.Mich.1988); *St. Albans Fin. Co. v. Blair,* 559 F.Supp. 523, 526, *aff'd,* 725 F.2d 670 (3d Cir.1983).

*Siskind*, 401 Md. at 55-61.

This situation involving Defense Counsel is the quintessential conflict of interest that cannot be undertaken and is expressly prohibited. *See* Md. Rule 19-301.7. There are no means by which Defense Counsel can litigate fairly against Kelly on behalf of Foertsch on the same issues for which Defense Counsel represented them jointly. Such representation will be directly adverse to Kelly, and Evelius' representation is materially limited by his responsibilities to her. *See id.* The *Brennan's* Court, confirmed by the Supreme Court of Maryland in *Siskind*, makes clear that disqualification of Defense Counsel is appropriate.

## II. EVELIUS IS A NECESSARY WITNESS WITH PERSONAL KNOWLEDGE OF RELEVANT AND MATERIAL FACTS AND IS PRECLUDED FROM BEING COUNSEL OF RECORD.

In addition to having been Kelly's former counsel, Evelius cannot represent the Defendants because he is a necessary fact witness. *See* Md. Rule 19-303.7. Prior to filing suit, Kelly repeatedly raised the issue with Foertsch of her interest in Bit Reactor, which Foertsch now denies. As confirmed by his responsive motion, Foertsch seeks to disclaim that he ever agreed Kelly was an owner or founder of Bit Reactor, which is not borne out by the history and, indeed, can be directly contradicted through the existing chain of emails and correspondence with Evelius. (Exhibits A-G). Moreover, Evelius was privy to several phone conversations and communications with Kelly and Foertsch that similarly refer or relate to Kelly having an ownership interest and being a founder of the Company. (Exhibit H). Evelius is clearly a fact witness who possesses relevant knowledge to material facts in this dispute.

Kelly previously identified Evelius as a witness and put him on notice of his role in that regard. (Exhibit I). In undersigned counsel's letter dated May 9, 2024, Kelly expressly noted that

Evelius was corporate counsel and could not represent Foertsch personally. Follow-up communications in this regard were sent on May 23, 2024 and on August 1, 2024. (Ex. I).

Amazingly, Foertsch now denies that Kelly is an owner in Bit Reactor. Given Evelius' involvement in those communications and the efforts previously taken on Kelly's behalf as an owner, his personal knowledge and conversations with the parties makes him a fact witness in this action. Pursuant to Md. Rule 19-303.7, "an attorney *shall not* act as advocate at a trial in which the attorney is likely to be a necessary witness." (emphasis added). Notwithstanding, Evelius and WC&S entered their appearance on behalf of Foertsch and Bit Reactor in this action when they filed the Defendants' Motion to Dismiss. As confirmed in *Klupt*, disqualification was appropriate because the lawyer was a witness and knew he would likely be called as one, making him aware of his potential conflict in undertaking the representation. *Id*., at 206-08. Given the clear prohibition that an attorney "shall not" act as an advocate when "likely to be" a witness, Defense Counsel must be disqualified.

## CONCLUSION

For these reasons, disqualification of Defense Counsel is appropriate. Kelly's Motion must be granted.

/s/ *Donald J. Walsh*
Donald J. Walsh (Bar #09384)
Marie Ignozzi (Bar #29762)
Stacey Torres (Bar #30944)
RKW, LLC
10075 Red Run Blvd., Suite 401
Owings Mills, MD 21117
443-379-4011
dwalsh@rkwlawgroup.com
mignozzi@rkwlawgroup.com
storres@rkwlawgroup.com

*Attorneys for Plaintiff*