## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("**Agreement**") is by and among Bit Reactor, LLC ("**Bit Reactor**" or the "**Company**"), Gregory Foertsch ("**Foertsch**"), Alison Kelly ("**Kelly**") and Thomas Whittaker ("**Whittaker**") (hereafter Bit Reactor, Foertsch, Kelly, and Whittaker are sometimes referred to individually and collectively as a "**party**" and the "**parties**," respectively) and shall become effective on the first date when it has been signed by all parties (such date, the "**Effective Date**").

WHEREAS, Whittaker was employed by Bit Reactor and said employment has ended;

WHEREAS, certain disputes have arisen among the parties and those disputes include, among other things, a dispute as to whether Whittaker owns an interest in Bit Reactor; and

WHEREAS, each party has determined that it, his, or her best interests will be best served by its, his, or her entry into this Agreement and each party has agreed to enter into this Agreement;

NOW THEREFORE, in consideration of the foregoing premises, the mutual promises and agreements expressed herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each party, intending to be legally bound, agrees as follows:

1. Whittaker's employment with Bit Reactor terminated in or about March 2022.

2. Within ten (10) days of the Effective Date, Bit Reactor shall pay the total sum of Sixty Thousand Dollars ($60,000.00) (the "Settlement Amount") to Whittaker or on his behalf in accordance with the following:

    (a) Bit Reactor shall issue a check payable to Whittaker in the gross amount of $49,200.00, in settlement of Whittaker's allegations and claims against Bit Reactor, for which Bit Reactor shall issue Whittaker an IRS Form 1099.

    (b) Bit Reactor shall issue a check payable to Kramon & Graham, P.A. in the amount of $10,800.00, which constitutes payment for Whittaker's legal fees, for which Bit Reactor shall issue Kramon & Graham, P.A. an IRS Form 1099.

    (c) Both of the above-described checks shall be delivered to Ezra S. Gollogly, Esquire, Kramon & Graham, P.A., One South Street, Suite 2600, Baltimore, Maryland 21202.

    (d) Bit Reactor shall cause the IRS Form W-2 and Form 1099s to be issued on or before the applicable IRS deadlines for tax year 2023. Within one (1) day of the Effective Date, Kramon & Graham, P.A. shall each provide Bit Reactor a W-9. Bit Reactor owes no further monetary amount, compensation or remuneration of any kind, including attorney's fees or other costs, to Whittaker other than the Settlement Amount.

3. Whittaker confirms and agrees that, but for the covenants and promises set forth in this Agreement and subject to Bit Reactor's compliance with this Agreement, (a) he would not be entitled to the payment/consideration referenced in this Agreement and (b) Bit Reactor, Foertsch, and Kelly each has paid and given to him all wages, monies, benefits, and other consideration to which he has ever been entitled from Bit Reactor, Foertsch, and/or Kelly as a result of his (Whittaker's) employment with Bit Reactor, the termination of Whittaker's employment with Bit Reactor, and/or any other occurrence or matter.

4. Except for those obligations and covenants which the parties have under this Agreement and effective upon receipt of the Settlement Amount by Whittaker and Kramon & Graham, P.A.:

(a) Whittaker does hereby forever and irrevocably waive, release, and discharge Bit Reactor, Foertsch, Kelly, and each of Bit Reactor's officers, directors, employees, members, owners, agents, representatives, independent contractors, affiliates, parents, subsidiaries, divisions, predecessors, assigns, successors, attorneys, and insurers (hereafter Bit Reactor and such persons are sometimes referred to as the "**Bit Reactor Releasees**") from any and all grievances, claims, demands, debts, defenses, actions, causes of action, obligations, contracts, promises, damages, judgments, expenses, attorney's fees, and liabilities, known or unknown, whatsoever, which Whittaker now has, ever has had, or ever may have, at law or in equity, in any way arising from or relating to any act, occurrence, or transaction occurring before this Agreement becomes effective, including without limitation (i) any and all claims relating to Mr. Whittaker's employment with Bit Reactor and/or the termination of that employment, (ii) any and all claims of or to ownership or membership in and/or with respect to Bit Reactor, and (iii) any and all claims of ownership in and/or with respect to the items/matters referenced in Section 7(c) of this Agreement. This is a GENERAL RELEASE. Mr. Whittaker expressly agrees and acknowledges that he intends to release the Bit Reactor Releasees from, among other things and without limitation, any and all claims relating to his employment with Bit Reactor, including without limitation tort and contract claims, wrongful discharge claims, arbitration claims, statutory claims, workers compensation claims, claims arising under common law, claims arising under any federal or state wage and hour law or wage collection law, and claims of discrimination based on age, race, color, sex, religion, handicap, disability, national origin, ancestry, citizenship, marital status, retaliation, or any other factor under the Age Discrimination in Employment Act (29 U.S.C. §§ 626 et seq.)(the "ADEA"), Title VII of the Civil Rights Acts of 1964 and 1991 as amended (42 U.S.C. §§ 2000e et seq.), the Employee Retirement Income Security Act (29 U.S.C. §§ 1001 et seq.), the Consolidated Omnibus Reconciliation Act of 1985 (29 U.S.C. §§ 1161 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.), the Rehabilitation Act of 1973 (29 U.S.C. §§ 701 et seq.), the Family and Medical Leave Act of 1993 (29 U.S.C. §§ 2601 et seq.), the Fair Labor Standards Act (29 U.S.C. §§ 201 et seq.), any Maryland statute prohibiting employment discrimination, and/or any other law, statute, regulation, or ordinance prohibiting employment discrimination or governing employment.

(b) Each of Bit Reactor, Foertsch, and Kelly does hereby forever and irrevocably release and discharge Whittaker from any and all grievances, claims, demands, debts, defenses, actions, causes of action, obligations, contracts, promises, damages, judgments, expenses, attorney's fees, and liabilities, known or unknown, whatsoever, which it, he, or she now has, ever has had, or ever may have, at law or in equity, in any way arising from or relating to any act, occurrence, or transaction occurring before this Agreement becomes effective. This is a GENERAL RELEASE.

5. That certain Bit Reactor Nondisclosure Agreement into which Bit Reactor and Mr. Whittaker entered on or about March 14, 2021 (the "**2021 NDA**") shall remain in effect at all times after this Agreement becomes effective.

6. Mr. Whittaker has reviewed and understands the provisions of that certain Development and Publishing Agreement into which Bit Reactor and Electronic Arts Inc. entered on or about February 5, 2021 (the "**DPA**") and shall not, at any time after this Agreement becomes effective, assert any claim or take any action that (i) is inconsistent with the DPA or the rights of either Bit Reactor or Electronic Arts Inc. under the DPA or (ii) if asserted or taken by Bit Reactor, would be a breach or violation of the DPA.

7. (a) Whittaker represents and warrants to Bit Reactor, Foertsch, and Kelly that, except for information or materials disclosed to Kramon & Graham, which is the law firm that has served as counsel to Whittaker in connection with the subject matter of this Agreement (hereafter Kramon & Graham is referred to as "**K&G**"), Whittaker has not disclosed to Firaxis Games, 2K Games, Take-Two Interactive

2



Software, Inc. or any other person, and Whittaker is not currently in possession, custody, or control of, the original or any copy of any of the following (which are hereafter referred to as "**Bit Reactor Materials**"):

    (i)    The DPA.

    (ii)    Any agreement between Bit Reactor and Electronic Arts, Inc.

    (iii)    Any pitch deck/game pitch, build file, build backup file, image, game design document, development process, prototype, project-planning or other documentation, software code, video, development process, database, email, text, written communication, or information relating to, or constituting:

        (aa)    Any Star Wars game.

        (bb)    Any APEX or Apex Legends game.

        (cc)    Any Haywyre game.

        (dd)    Any game or game concept which Whittaker learned, or became aware of, from or during the course of his employment or affiliation with Bit Reactor or Foertsch.

    (iv)    Any electronic or other record, obtained by Whittaker in the course of or by virtue of his employment with Bit Reactor or his affiliation with Foertsch, of information relating to any item or matter referenced in clause(s) (aa), (bb), (cc), and/or (dd) of Section 7(a)(iii).

    (v)    Any electronic or other record, obtained by Whittaker in the course of or by virtue of his employment with Bit Reactor or his affiliation with Foertsch, of financial or other information relating to the business or affairs of Bit Reactor or Foertsch.

    (b)    Whittaker has, in writing, instructed K&G to keep Bit Reactor Materials confidential and to refrain from disclosing Bit Reactor Materials to Whittaker or any other person or entity. Whittaker agrees that K&G shall be obligated and entitled to comply with this Section 7(b) and that Bit Reactor is an intended beneficiary of this Section 7(b).

    8.    Whittaker represents, warrants, and agrees that he has not made, filed, or joined, and, to the maximum extent permitted by law, he will not make file, join, or participate in, any lawsuits, charges, complaints, or other proceedings against Bit Reactor or any of the Bit Reactor Releasees concerning any matter relating to his employment with Bit Reactor that arose before this Agreement becomes effective. Anything in the preceding sentence to the contrary notwithstanding, Bit Reactor and Whittaker agree that, to the extent, if any, that Whittaker may have a non-waivable right to make, file, join, or participate in a proceeding against Bit Reactor or any of the Bit Reactor Releasees, this Agreement is not intended to waive such right; provided, however, that Whittaker acknowledges and agrees that he hereby waives any and all rights that he may have to recover or receive damages or other relief in connection with or through any such proceeding.

    9.    Each party agrees to keep the terms of this Agreement strictly confidential and not to disclose such terms to any person or entity, except (i) to the extent necessary to obtain services from an accountant, attorney, or other professional adviser, (ii) to the extent necessary to comply with applicable



law or an obligation to respond to a government agency, (iii) to immediate family members (in the case of Whittaker, Foertsch, and Kelly), and (iv) to the extent necessary to enforce this Agreement.

10. As a material part of this Agreement, the parties further agree as follows:

(a) At all times after this Agreement becomes effective, Whittaker shall refrain from making or publishing any oral or written statement that disparages, or that may reasonably be expected to adversely affect the business, public image, reputation, or goodwill of, Bit Reactor, Foertsch, Kelly, any present or former founder, employee, officer, or director of Bit Reactor, or any member of such persons' families.

(b) Bit Reactor, Foertsch, and Kelly shall refrain from making or publishing any oral or written statement that disparages, or that may reasonably be expected to adversely affect the business, public image, reputation, or goodwill of, Whittaker or any member of his family.

(c) Anything in this Agreement to the contrary notwithstanding, nothing in this Section 10 applies to statements that are made, after this Agreement become effective, in compliance with a subpoena, in connection with litigation, or pursuant to a contractual or legal obligation.

11. Whittaker represents and agrees (i) that he has returned to Bit Reactor any and all property of Bit Reactor which has ever been in his possession, custody, or control (including but not limited to any employee identification cards, keys, access cards, purchasing cards, cell phones, laptops, user names, passwords, and information); and (ii) that he has removed all of his personal belongings from any premises of Bit Reactor.

12. This Agreement sets forth the entire understanding and agreement of the parties with respect to the subject matter hereof and supersedes any prior agreements, understandings, and practices not specifically set forth or referenced herein.

13. Each party represents and acknowledges that it, he, or she has been given sufficient time to review carefully and discuss the terms of this Agreement with counsel of its, his, or her own selection; that it, he, or she understands fully the terms and conditions of this Agreement; and that it, he, or she is entering into this Agreement voluntarily, without duress, and of its, his, or her own free will.

14. Changes to this Agreement, whether by addition, waiver, deletion, amendment, or modification, may be accomplished only by a writing signed by all parties. If any provision or part of a provision of this Agreement is found to be in violation of law or otherwise unenforceable in any respect, the remaining provisions or parts of provisions shall remain unaffected and this Agreement shall be reformed and construed to the maximum extent possible as if such provision or part of a provision held to be in violation of law or otherwise unenforceable had never been contained herein.

15. No party's entry into this Agreement shall constitute, or in any way be deemed, an admission of wrongful conduct or any violation of law by such party, and each party expressly denies any such wrongful conduct or violation of law.

16. If any term of this Agreement is deemed null, void, or inoperative, the remaining provisions will remain in full force and effect. The language of this Agreement shall not, solely on account of having been drafted by one party, be construed against that party.

17. This Agreement shall be construed in accordance with the laws of the State of Maryland, exclusive of that State's conflicts of laws rules.

4



18.     A party's signature to this Agreement, if delivered by electronic mail, facsimile, or personally to each other party, shall, as so delivered, be deemed an original signature of the former party and this Agreement may be executed in counterparts, each of which (including any signed electronic or facsimile copy of this Agreement) shall be deemed an original.

19.     In signing and entering into this Agreement, no party relies on any oral or written statement or promise by another party, or any other person or entity, that is not set forth in this Agreement.

IN WITNESS WHEREOF, each party has executed this Agreement.

Bit Reactor, LLC

10/10/22         By: _____
Date                  Gregory Foertsch, Member

10/10/22         _____
Date                  Gregory Foertsch

_____         _____
Date                  Alison Kelly

_____         _____
Date                  Thomas Whittaker

18. A party's signature to this Agreement, if delivered by electronic mail, facsimile, or personally to each other party, shall, as so delivered, be deemed an original signature of the former party and this Agreement may be executed in counterparts, each of which (including any signed electronic or facsimile copy of this Agreement) shall be deemed an original.

19. In signing and entering into this Agreement, no party relies on any oral or written statement or promise by another party, or any other person or entity, that is not set forth in this Agreement.

IN WITNESS WHEREOF, each party has executed this Agreement.

Bit Reactor, LLC

By: _____
Date          Gregory Foertsch, Member

Date          Gregory Foertsch

10/9/23
Date          Alison Kelly

Date          Thomas Whittaker

5

4877-9116-1212, v. 1

17. This Agreement shall be construed in accordance with the laws of the State of Maryland, exclusive of that State's conflicts of laws rules.

18. A party's signature to this Agreement, if delivered by electronic mail, facsimile, or personally to each other party, shall, as so delivered, be deemed an original signature of the former party and this Agreement may be executed in counterparts, each of which (including any signed electronic or facsimile copy of this Agreement) shall be deemed an original.

19. In signing and entering into this Agreement, no party relies on any oral or written statement or promise by another party, or any other person or entity, that is not set forth in this Agreement.

IN WITNESS WHEREOF, each party has executed this Agreement.

Bit Reactor, LLC

By: _____
Date        Gregory Foertsch, Member

_____
Date        Gregory Foertsch

_____
Date        Alison Kelly

10/12/23    _____
Date        Thomas Whittaker

5