**alisonfkelly@gmail.com**

| | |
|---|---|
| **From:** | Greg Foertsch <gfoertsch@gmail.com> |
| **Sent:** | Tuesday, March 15, 2022 9:19 AM |
| **To:** | Alison Kelly |
| **Subject:** | Fwd: Draft - Severance Agreement |
| **Attachments:** | Severance Agreement and Release - Draft (00453260xB71C4).docx |

---------- Forwarded message ---------
From: **Paul Evelius** <pevelius@wcslaw.com>
Date: Tue, Mar 15, 2022 at 12:28 AM
Subject: Draft - Severance Agreement
To: Greg Foertsch <gfoertsch@gmail.com>

Greg—

Sorry for the late hour, but I realized that I'd better get this to you tonight, as I'll be in court tomorrow morning. Please excuse any typos, as I haven't had a chance to proof it closely. Please note:

1.   The language in Paragraph 9 about Tom having 21 days to review and 7 days to revoke is designed to ensure that the waiver of age discrimination claims is enforceable. It is relatively customary in these types of agreements, but if you're concerned that it will complicate this process and you are absolutely not concerned about any age-discrimination claim, we could consider deleting it.

2.   Please send me a copy of any NDA that Tom signed previously. You may have sent it to me last year, but I just don't have it handy. We may want to reference it in this Agreement and say that it is still applicable.

Thanks. Please feel free to send back any comments and/or we can talk.

Paul

WCS

**Paul F. Evelius**
Wright, Constable & Skeen, LLP

7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Tele: 410-659-1302 Fax: 410-659-1350
Cell: 443-762-1015
E-mail: pevelius@wcslaw.com
www.wcslaw.com

Confidentiality Disclaimer

This message may contain privileged or confidential information that is protected from disclosure. If you are not the intended re this message, you may not disseminate, distribute or copy it. If you have received this message in error, please delete it and n sender immediately by reply email or by calling 410-659-1300.

IRS Disclaimer

IRS rules restrict written federal tax advice from lawyers and accountants. We include this statement in all outbound emails bec inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid any penalty federal tax laws. This message was not written to support the promotion or marketing of any transaction. Contact the sender if engage us to provide formal written advice as to tax issues.

**alisonfkelly@gmail.com**

| | |
|---|---|
| **From:** | Greg Foertsch <gfoertsch@gmail.com> |
| **Sent:** | Wednesday, March 16, 2022 9:55 AM |
| **To:** | Alison Kelly |
| **Subject:** | Fwd: Severance Agreement |
| **Attachments:** | Draft Severance Agreement (3-15-22) (00453380xB71C4).docx; Exhibit A to Severance Agreement (00453387xB71C4).docx |

---------- Forwarded message ---------
From: **Paul Evelius** <pevelius@wcslaw.com>
Date: Wed, Mar 16, 2022 at 9:41 AM
Subject: Severance Agreement
To: Greg Foertsch <gfoertsch@gmail.com>

Morning Greg—Thanks to both Alison and you for your comments/review. Attached for your further review are a revised version of the Severance Agreement and a draft of an Exhibit A (which is basically the Termination Checklist as revised by me). I've made some comments in all caps in the margin. Please let me know your thoughts. Also, I apologize in advance if you have to bear with me a bit, as I'm beginning a two-week trial on Friday. Thanks! Paul



**Paul F. Evelius**
Wright, Constable & Skeen, LLP

7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Tele: 410-659-1302 Fax: 410-659-1350
Cell: 443-762-1015
E-mail: pevelius@wcslaw.com
www.wcslaw.com

Confidentiality Disclaimer


This message may contain privileged or confidential information that is protected from disclosure.  If you are not the intended re
this message, you may not disseminate, distribute or copy it.  If you have received this message in error, please delete it and n
sender immediately by reply email or by calling 410-659-1300.

IRS Disclaimer

IRS rules restrict written federal tax advice from lawyers and accountants. We include this statement in all outbound emails bec
inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid any penalty
federal tax laws. This message was not written to support the promotion or marketing of any transaction. Contact the sender if
engage us to provide formal written advice as to tax issues.

**alisonfkelly@gmail.com**

| | |
|---|---|
| **From:** | Paul Evelius <pevelius@wcslaw.com> |
| **Sent:** | Thursday, March 17, 2022 2:21 PM |
| **To:** | alisonfkelly@gmail.com |
| **Cc:** | Greg Foertsch |
| **Subject:** | Re: Questions/bit reactor |

Thanks Alison. I have a call scheduled shortly and that may take awhile. Your email gives me enough info to prepare another draft, which I'll do and then send it to you by early evening. Will that work?

Sent from my iPhone

On Mar 17, 2022, at 2:17 PM, alisonfkelly@gmail.com wrote:

Hi Paul,
Just to clarify... we can have his last day be April 2. Payroll 3/20 to 4/2 (last day). It would drop into his bank account on 4/8. We get paid bi-weekly.

Greg is wrapping up a call and we can call you.

Alison F. Kelly

*This email and any attachments are only for use by the intended recipient(s) and may contain legally privileged, confidential, proprietary or otherwise private information. Any unauthorized use, reproduction, dissemination, distribution or other disclosure of the contents of this e-mail or its attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete the original.*

**From:** Paul Evelius <pevelius@wcslaw.com>
**Sent:** Thursday, March 17, 2022 12:48 PM
**To:** 'alisonfkelly@gmail.com' <alisonfkelly@gmail.com>
**Cc:** 'Greg Foertsch' <gfoertsch@gmail.com>
**Subject:** RE: Questions/bit reactor

Hello Alison. See my replies after your comments. Once you've reviewed them, let me know if it's easiest if we talk. Thanks. Paul



**Paul F. Evelius**
Wright, Constable & Skeen, LLP

7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Tele: 410-659-1302 Fax: 410-659-1350
Cell: 443-762-1015
E-mail: pevelius@wcslaw.com
www.wcslaw.com

Confidentiality Disclaimer

This message may contain privileged or confidential information that is protected from disclosure.  If you are not the int
this message, you may not disseminate, distribute or copy it.  If you have received this message in error, please delete
sender immediately by reply email or by calling 410-659-1300.

IRS Disclaimer

IRS rules restrict written federal tax advice from lawyers and accountants. We include this statement in all outbound em
inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid any
federal tax laws. This message was not written to support the promotion or marketing of any transaction. Contact the s
engage us to provide formal written advice as to tax issues.

**From:** alisonfkelly@gmail.com [mailto:alisonfkelly@gmail.com]
**Sent:** Thursday, March 17, 2022 11:44 AM
**To:** 'Greg Foertsch' <gfoertsch@gmail.com>; Paul Evelius <pevelius@wcslaw.com>
**Subject:** RE: Questions/bit reactor

Hi Paul,
In review with Greg, my comments are in red:

1.      Will TW be on garden leave, but still an employee of BR, during the time period from 3/16 to 4/2?
(I'm thinking that the answer must be yes, given that he can't make or receive 401(k) contributions
unless he's still an employee.)

Answer: Yes you are correct. Tom would receive his normal paycheck 3/6-3/19 ($7692.31) and the next
pay-period would be his "last" paycheck /lump sum ($46,153.92). This would allow him to contribute to
his 401k

2.      Assuming that the answer to question 1 is in fact yes, then can we treat $7,692.31 of the $46,153.92
as his last regular salary payment and the balance of the $46,153.92 as severance pay? (Basically, I want
to make sure that he can make a 401(k) contribution on severance pay that is received with his final
paycheck.)

Answer: Yes correct.

3.   Will the fact that TW receives payment on 4/8 (after his final day of employment), rather than on 4/2 (his final day of employment), matter relative to TW's ability to make and receive 401(k) contributions?

Answer: Tom needs to be employed to receive 401k match and contribute.*[PE]*  Is there any way that Bit Reactor could make the actual payment of the check on 4/2? I ask because it seems that, otherwise, we have to keep him employed until 4/8, which would mean that we'd have to pay him until then. Basically, it looks like it would be easiest if we can make the payment on a date when he is unquestionably still an employee.

4.   If TW takes the full 21 days to sign this Agreement and then takes the full 7 day revocation period to decide whether to revoke his signature, then the Agreement will not yet be fully effective as of April 8. To address that possibility, can we, without jeopardizing TW's ability to make and receive 401(k) contributions, simply state that, if the Agreement is not yet effective as of April 8, TW's employment will be deemed extended until the Agreement becomes effective and the payment date will be pushed back accordingly?

Comments:
My thought is if he chooses not to sign immediately then we will just pay him 3 months ($46k) and pto/vacation ($15,384.64) and be done. Greg and I are trying to be nice since we know how much his 401k plan means to him, but we are both tired of being accommodating. No company would be this flexible when someone resigned. Do you think to make this even cleaner/easy/simpler, we just take this 401K issue /match off the table? We are open to suggestions.*[PE]*  The downside to this is that, if the Agreement ultimately does not take effect, Bit Reactor will have paid him all that severance pay without getting anything (including a release of all claims) in return. Ultimately, of course, this is your call; I just need to advise you of this risk.

*Thanks.*

*Paul*


Ccd Greg




Alison F. Kelly

*This email and any attachments are only for use by the intended recipient(s) and may contain legally privileged, confidential, proprietary or otherwise private information. Any unauthorized use, reproduction, dissemination, distribution or other disclosure of the contents of this e-mail or its attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete the original.*


**From:** Greg Foertsch <gfoertsch@gmail.com>
**Sent:** Wednesday, March 16, 2022 9:23 PM
**To:** Alison Kelly <alisonfkelly@gmail.com>
**Subject:** Fwd: Questions

---------- Forwarded message ---------
From: **Paul Evelius** <pevelius@wcslaw.com>
Date: Wed, Mar 16, 2022, 9:22 PM
Subject: Questions
To: Greg Foertsch <gfoertsch@gmail.com>


Greg—Following up our conversation, here are my questions:


1.    Will TW be on garden leave, but still an employee of BR, during the time period from 3/16 to 4/2? (I'm thinking that the answer must be yes, given that he can't make or receive 401(k) contributions unless he's still an employee.)

2.    Assuming that the answer to question 1 is in fact yes, then can we treat $7,692.31 of the $46,153.92 as his last regular salary payment and the balance of the $46,153.92 as severance pay? (Basically, I want to make sure that he can make a 401(k) contribution on severance pay that is received with his final paycheck.)

3.    Will the fact that TW receives payment on 4/8 (after his final day of employment), rather than on 4/2 (his final day of employment), matter relative to TW's ability to make and receive 401(k) contributions?

4.    If TW takes the full 21 days to sign this Agreement and then takes the full 7 day revocation period to decide whether to revoke his signature, then the Agreement will not yet be fully effective as of April 8. To address that possibility, can we, without jeopardizing TW's ability to make and receive 401(k) contributions, simply state that, if the Agreement is not yet effective as of April 8, TW's employment will be deemed extended until the Agreement becomes effective and the payment date will be pushed back accordingly?


Thanks.


Paul



**Paul F. Evelius**
Wright, Constable & Skeen, LLP

7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Tele: 410-659-1302 Fax: 410-659-1350
Cell: 443-762-1015
E-mail: pevelius@wcslaw.com
www.wcslaw.com

Confidentiality Disclaimer

This message may contain privileged or confidential information that is protected from disclosure. If you are not the i
this message, you may not disseminate, distribute or copy it. If you have received this message in error, please dele
sender immediately by reply email or by calling 410-659-1300.

IRS Disclaimer

IRS rules restrict written federal tax advice from lawyers and accountants. We include this statement in all outbound e
inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid an
federal tax laws. This message was not written to support the promotion or marketing of any transaction. Contact the
engage us to provide formal written advice as to tax issues.

**alisonfkelly@gmail.com**

| | |
|---|---|
| **From:** | Paul Evelius <pevelius@wcslaw.com> |
| **Sent:** | Thursday, March 17, 2022 9:36 PM |
| **To:** | 'alisonfkelly@gmail.com'; 'Greg Foertsch' |
| **Subject:** | RE: Questions/bit reactor |
| **Attachments:** | Draft Severance Agreement (3-15-22) (00453380xB71C4).docx |

Hi Alison, Greg—

Attached is a revised draft of the Severance Agreement. I've cut out all the redlining and comments, because I know they must've been getting confusing. The main changes are in paragraph 2, where I've added language. Basically, I've tried to insert provisions which accommodate the possibility that the Agreement doesn't become effective by April 8 by stating that, in such event, his employment will just get slightly extended. Anyway, I think it's a good idea if you and I give the entire draft another read-through, given the number of changes we've made over the past few days and then finalize it for delivery to TW. Also, I think it's a good idea for you to confirm with the 401(k) plan administrator that there's nothing in the draft that will prevent 401(k) contributions (including matching contributions) from being made from the final salary payments and the severance-pay amount. I'll be in Court for at least the morning tomorrow and possibly into early afternoon, but will try respond to any comments/questions as soon as I can. Thanks! Paul



**Paul F. Evelius**
Wright, Constable & Skeen, LLP

7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Tele: 410-659-1302 Fax: 410-659-1350
Cell: 443-762-1015
E-mail: pevelius@wcslaw.com
www.wcslaw.com

Confidentiality Disclaimer

This message may contain privileged or confidential information that is protected from disclosure.  If you are not the intended r this message, you may not disseminate, distribute or copy it.  If you have received this message in error, please delete it and n sender immediately by reply email or by calling 410-659-1300.

IRS Disclaimer

IRS rules restrict written federal tax advice from lawyers and accountants. We include this statement in all outbound emails bec inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid any penalty federal tax laws. This message was not written to support the promotion or marketing of any transaction. Contact the sender if engage us to provide formal written advice as to tax issues.

From: alisonfkelly@gmail.com [mailto:alisonfkelly@gmail.com]
**Sent:** Thursday, March 17, 2022 8:04 PM
**To:** Paul Evelius <pevelius@wcslaw.com>
**Cc:** 'Greg Foertsch' <gfoertsch@gmail.com>
**Subject:** RE: Questions/bit reactor

yes

Alison F. Kelly

*This email and any attachments are only for use by the intended recipient(s) and may contain legally privileged, confidential, proprietary or otherwise private information. Any unauthorized use, reproduction, dissemination, distribution or other disclosure of the contents of this e-mail or its attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete the original.*

**From:** Paul Evelius <pevelius@wcslaw.com>
**Sent:** Thursday, March 17, 2022 2:21 PM
**To:** alisonfkelly@gmail.com
**Cc:** Greg Foertsch <gfoertsch@gmail.com>
**Subject:** Re: Questions/bit reactor

Thanks Alison. I have a call scheduled shortly and that may take awhile. Your email gives me enough info to prepare another draft, which I'll do and then send it to you by early evening. Will that work?

Sent from my iPhone

> On Mar 17, 2022, at 2:17 PM, alisonfkelly@gmail.com wrote:
>
> Hi Paul,
> Just to clarify... we can have his last day be April 2. Payroll 3/20 to 4/2 (last day). It would drop into his bank account on 4/8. We get paid bi-weekly.
>
> Greg is wrapping up a call and we can call you.
>
> Alison F. Kelly
>
> *This email and any attachments are only for use by the intended recipient(s) and may contain legally privileged, confidential, proprietary or otherwise private information. Any unauthorized use, reproduction, dissemination, distribution or other disclosure of the contents of this e-mail or its attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete the original.*
>
> **From:** Paul Evelius <pevelius@wcslaw.com>
> **Sent:** Thursday, March 17, 2022 12:48 PM
> **To:** 'alisonfkelly@gmail.com' <alisonfkelly@gmail.com>
> **Cc:** 'Greg Foertsch' <gfoertsch@gmail.com>
> **Subject:** RE: Questions/bit reactor
>
> Hello Alison. See my replies after your comments. Once you've reviewed them, let me know if it's easiest if we talk. Thanks. Paul



**Paul F. Evelius**
Wright, Constable & Skeen, LLP

7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Tele: 410-659-1302 Fax: 410-659-1350
Cell: 443-762-1015
E-mail: pevelius@wcslaw.com
www.wcslaw.com

Confidentiality Disclaimer

This message may contain privileged or confidential information that is protected from disclosure.  If you are not the in
this message, you may not disseminate, distribute or copy it.  If you have received this message in error, please delete
sender immediately by reply email or by calling 410-659-1300.

IRS Disclaimer

IRS rules restrict written federal tax advice from lawyers and accountants. We include this statement in all outbound e
inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid any
federal tax laws. This message was not written to support the promotion or marketing of any transaction. Contact the s
engage us to provide formal written advice as to tax issues.

**From:** alisonfkelly@gmail.com [mailto:alisonfkelly@gmail.com]
**Sent:** Thursday, March 17, 2022 11:44 AM
**To:** 'Greg Foertsch' <gfoertsch@gmail.com>; Paul Evelius <pevelius@wcslaw.com>
**Subject:** RE: Questions/bit reactor

Hi Paul,
In review with Greg, my comments are in red:

1.     Will TW be on garden leave, but still an employee of BR, during the time period from 3/16 to 4/2?
(I'm thinking that the answer must be yes, given that he can't make or receive 401(k) contributions
unless he's still an employee.)

Answer: Yes you are correct. Tom would receive his normal paycheck 3/6-3/19 ($7692.31) and the next
pay-period would be his "last" paycheck /lump sum ($46,153.92). This would allow him to contribute to
his 401k

2.    Assuming that the answer to question 1 is in fact yes, then can we treat $7,692.31 of the $46,153.92
as his last regular salary payment and the balance of the $46,153.92 as severance pay? (Basically, I want
to make sure that he can make a 401(k) contribution on severance pay that is received with his final
paycheck.)

Answer: Yes correct.

3.   Will the fact that TW receives payment on 4/8 (after his final day of employment), rather than on 4/2 (his final day of employment), matter relative to TW's ability to make and receive 401(k) contributions?

Answer: Tom needs to be employed to receive 401k match and contribute. *[PE]* Is there any way that Bit Reactor could make the actual payment of the check on 4/2? I ask because it seems that, otherwise, we have to keep him employed until 4/8, which would mean that we'd have to pay him until then. Basically, it looks like it would be easiest if we can make the payment on a date when he is unquestionably still an employee.

4.   If TW takes the full 21 days to sign this Agreement and then takes the full 7 day revocation period to decide whether to revoke his signature, then the Agreement will not yet be fully effective as of April 8. To address that possibility, can we, without jeopardizing TW's ability to make and receive 401(k) contributions, simply state that, if the Agreement is not yet effective as of April 8, TW's employment will be deemed extended until the Agreement becomes effective and the payment date will be pushed back accordingly?

Comments:
My thought is if he chooses not to sign immediately then we will just pay him 3 months ($46k) and pto/vacation ($15,384.64) and be done. Greg and I are trying to be nice since we know how much his 401k plan means to him, but we are both tired of being accommodating. No company would be this flexible when someone resigned. Do you think to make this even cleaner/easy/simpler, we just take this 401K issue /match off the table? We are open to suggestions. *[PE]* The downside to this is that, if the Agreement ultimately does not take effect, Bit Reactor will have paid him all that severance pay without getting anything (including a release of all claims) in return. Ultimately, of course, this is your call; I just need to advise you of this risk.

*Thanks.*

*Paul*


Ccd Greg




Alison F. Kelly

*This email and any attachments are only for use by the intended recipient(s) and may contain legally privileged, confidential, proprietary or otherwise private information. Any unauthorized use, reproduction, dissemination, distribution or other disclosure of the contents of this e-mail or its attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and delete the original.*


**From:** Greg Foertsch <gfoertsch@gmail.com>
**Sent:** Wednesday, March 16, 2022 9:23 PM
**To:** Alison Kelly <alisonfkelly@gmail.com>
**Subject:** Fwd: Questions

---------- Forwarded message ---------
From: **Paul Evelius** <pevelius@wcslaw.com>
Date: Wed, Mar 16, 2022, 9:22 PM
Subject: Questions
To: Greg Foertsch <gfoertsch@gmail.com>

Greg—Following up our conversation, here are my questions:

1.   Will TW be on garden leave, but still an employee of BR, during the time period from 3/16 to 4/2? (I'm thinking that the answer must be yes, given that he can't make or receive 401(k) contributions unless he's still an employee.)

2.   Assuming that the answer to question 1 is in fact yes, then can we treat $7,692.31 of the $46,153.92 as his last regular salary payment and the balance of the $46,153.92 as severance pay? (Basically, I want to make sure that he can make a 401(k) contribution on severance pay that is received with his final paycheck.)

3.   Will the fact that TW receives payment on 4/8 (after his final day of employment), rather than on 4/2 (his final day of employment), matter relative to TW's ability to make and receive 401(k) contributions?

4.   If TW takes the full 21 days to sign this Agreement and then takes the full 7 day revocation period to decide whether to revoke his signature, then the Agreement will not yet be fully effective as of April 8. To address that possibility, can we, without jeopardizing TW's ability to make and receive 401(k) contributions, simply state that, if the Agreement is not yet effective as of April 8, TW's employment will be deemed extended until the Agreement becomes effective and the payment date will be pushed back accordingly?

Thanks.

Paul

**Paul F. Evelius**
Wright, Constable & Skeen, LLP

7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Tele: 410-659-1302 Fax: 410-659-1350
Cell: 443-762-1015
E-mail: pevelius@wcslaw.com
www.wcslaw.com

Confidentiality Disclaimer

This message may contain privileged or confidential information that is protected from disclosure.  If you are not the int this message, you may not disseminate, distribute or copy it.  If you have received this message in error, please delete sender immediately by reply email or by calling 410-659-1300.

IRS Disclaimer

IRS rules restrict written federal tax advice from lawyers and accountants. We include this statement in all outbound en inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid any federal tax laws. This message was not written to support the promotion or marketing of any transaction. Contact the s engage us to provide formal written advice as to tax issues.