## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ALISON KELLY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. JKB-24-02161** |
| **GREGORY FOERTSCH,** *et al.*, | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM AND ORDER

Plaintiff Alison Kelly has filed suit against Defendants Gregory Foertsch and Bit Reactor, LLC ("Bit Reactor"), alleging, *inter alia*, breach of fiduciary duty and breach of contract. Now pending before the Court are two motions: Defendants have filed a "Motion to Dismiss Complaint in its Entirety" (the "Motion to Dismiss") (ECF No. 4); and Plaintiff has filed a "Motion to Disqualify Paul Evelius and Wright, Constable & Skeen LLP as Defense Counsel" (the "Motion to Disqualify") (ECF No. 7).

For the following reasons, the Court will hold both motions in abeyance, and will direct the parties to show cause why this action should not be dismissed for lack of federal subject-matter jurisdiction.

### I.    Factual Allegations[1]

Kelly is a Florida resident who had 18 years of experience in the software and gaming industry as of the time of the formation of Bit Reactor. (ECF No. 1, Compl. ¶ 3.) Foertsch is a Maryland resident with 25 years of experience in software and game development, who formerly

---

[1] For the purpose of determining whether the Court has subject-matter jurisdiction, the Court assumes the veracity of the Complaint's factual allegations.

worked at Firaxis Games. (*Id.* ¶ 4.) Kelly and Foertsch have been friends since 2004. (*Id.* ¶ 3.)

Starting in 2019, Kelly, Foertsch, Thomas Whittaker, and an unnamed fourth individual began exploring the idea of starting a video game development company. (*Id.* ¶¶ 7, 16.) In 2020, Kelly facilitated a meeting with executives at Respawn, a subsidiary of the prominent gaming company Electronic Arts ("EA"). (*Id.* ¶ 8.) EA expressed an interest in collaboration, but "EA naturally wanted to contract with a company, not just a collection of aspiring game developers." (*Id.*) So, the four individuals "agreed to start Bit Reactor," and began discussing the terms of an operating agreement for the company.[2] (*Id.* ¶ 9.)

The unnamed fourth individual left the company by March 2021, and the remaining three— Kelly, Foertsch, and Whittaker—agreed to be co-owners of Bit Reactor. (*Id.* ¶¶ 11, 16.) The individuals circulated draft operating agreements but never finalized a written operating agreement. (*Id.* ¶¶ 11–12.) In the most recent draft operating agreement, dated April 2021, "Foertsch acknowledged the equal ownership of the three members." (*Id.* ¶ 12.) The parties also agreed that Foertsch would be the Chief Executive Officer ("CEO") of Bit Reactor, and Kelly the Chief Operating Officer ("COO"). (*Id.* ¶ 13.) Whittaker resigned from Bit Reactor and renounced any ownership interest in the firm sometime in the fall of 2023, leaving Kelly and Foertsch as 50% co-owners. (*Id.* ¶ 16.)

Kelly alleges that "[a]fter Mr. Whittaker exited the Company, beginning in late 2023 and continuing through today, Foertsch began to treat Kelly differently and was far more aggressive toward her." (*Id.* ¶ 17.) Foertsch allegedly refused to discipline an employee who behaved inappropriately toward Kelly, and instead promoted the employee and gave him duties within the

---

[2] The narrative section of the Complaint does not explain precisely how or when the company became organized as a limited liability company ("LLC"), but Plaintiff alleges that "Bit Reactor is a Maryland limited liability company which develops computer games and software," (Compl. ¶ 2) and Defendants also refer to Bit Reactor as an LLC (*see, e.g.*, ECF No. 4 at 1).

scope of Kelly's COO responsibilities. (*Id.* ¶¶ 18–20.) In an effort to expel Kelly from the company, Foertsch "locked her out" of access to internal financial systems and directed employees not to respond to her requests for access. (*Id.* ¶ 21.) Foertsch also allegedly excluded Kelly from meetings, represented to "numerous third parties, including the IRS and lenders," that he was the sole, 100% owner of Bit Reactor, with an interest valued at $43 million, and directed Bit Reactor's counsel to prepare an operating agreement to that effect. (*Id.* ¶¶ 25–28.) Kelly also alleges that Foertsch diverted company assets for his personal benefit "without full disclosure and transparency." (*Id.* ¶ 25.)

Kelly filed the instant six-count Complaint in July 2024, bringing claims for breach of fiduciary duty (Count I), breach of contract (count II), unjust enrichment/quantum meruit (Count III), declaratory relief (Count IV), accounting (Count V), and fraud (Count VI). (Compl. ¶¶ 30–66.)

## II.    Discussion

Defendants have not raised the defense of lack of subject-matter jurisdiction. Nevertheless, in every action, the Court must satisfy itself that it has jurisdiction. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 94 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (cleaned up)). As the Fourth Circuit has explained:

> Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties. Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court.

*Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004)

(citations and internal quotation marks omitted).

Kelly asserts that the Court has subject-matter jurisdiction under the federal diversity jurisdiction statute, 28 U.S.C. § 1332(a). (Compl. ¶ 5.) That statute provides, in relevant part, that federal district courts have original jurisdiction over matters in which (1) the amount in controversy exceeds $75,000, and (2) the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). For over two hundred years, the Supreme Court has interpreted § 1332(a) to require "complete diversity," meaning that "the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)).[3]

When determining the citizenship of a business entity, a threshold question is whether it is incorporated. *See Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 702–03 (4th Cir. 2010). A corporation is deemed to be a citizen only of the state in which it is incorporated and the state in which it has its principal place of business. *Central W. Va. Energy Co. v. Mtn. State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing 28 U.S.C. § 1332(c)(1)). For "artificial entities other than corporations[,] . . . courts must look to the citizenship of their members when determining whether diversity jurisdiction exists." *Ferrell*, 591 F.3d at 702 (emphasis deleted). An LLC is an unincorporated association. *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004). Thus, "for purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members." *Central W. Va.*, 636 F.3d at 103.

---

[3] The complete diversity rule is subject to an exception for certain kinds of class actions pursuant to a provision of the Class Action Fairness Act of 2005 ("CAFA"). *Central W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 & n.1 (4th Cir. 2011) (citing 28 U.S.C. § 1332(d)). This case is not a class action, so CAFA's more permissive diversity requirements are irrelevant here.

4

Here, Kelly repeatedly alleges that she is a member of Bit Reactor. (*E.g.*, Compl. ¶ 1 ("This action is to establish and confirm that Kelly is a co-founder and fifty percent member of Bit Reactor, which she and Foertsch started."); *id.* ¶ 16 (alleging that there are "two remaining members [of Bit Reactor], Foertsch and Kelly."). The Court must take Kelly's jurisdictional allegations as true when, as here, the facts relevant to the jurisdictional issue are intertwined with the merits of the case. *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)) (explaining how courts review factual allegations on a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)); *WG/Welsh Mechanical Contractors, LLC v. Int'l Assoc. of Sheet Metal, Air, Rail & Transp. Workers, Local Union 100*, 684 F. Supp. 3d 432, 436 (D. Md. 2023) ("Although the jurisdictional issue was raised by the court *sua sponte*, analysis proceeds as if a motion pursuant to Rule 12(b)(1) had been lodged."). So, for the purposes of establishing jurisdiction, the Court assumes the truthfulness of Kelly's allegation that she is a member of the LLC. Therefore, it appears to the Court that Bit Reactor is a citizen of both Florida and Maryland—the states where Kelly and Foertsch, respectively, reside. (Compl. ¶¶ 3–4.)

If the Court's understanding of Bit Reactor's citizenship status is correct, then this case lacks complete diversity, because both Kelly and Bit Reactor are citizens of Florida. The Court therefore would be without jurisdiction, and would have no choice but to dismiss this case. *See Capps v. Newmark S. Region, LLC*, 53 F.4th 299, 302 (4th Cir. 2022) (holding that a district court erred in exercising diversity jurisdiction over an action because there was not complete diversity between a member of the defendant LLC and the plaintiff); *cf. JBG/JER Shady Grove, LLC v. Eastman Kodak Co.*, 127 F. Supp. 2d 700, 702 (D. Md. 2001) (in a purported diversity action, granting a motion to remand to state court because both the defendant and a member of the plaintiff LLC were citizens of the same state).

Before dismissing an action *sua sponte*, it is ordinarily proper for the Court to give the plaintiff notice and an opportunity to be heard in response. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (4th ed. 2024). Thus, instead of ordering an immediate dismissal, the Court will give the parties an opportunity to show why this action should not be dismissed.

## III.    Conclusion

For the foregoing reasons, it is ORDERED that:

1.  The parties SHALL SHOW CAUSE, within two weeks of the date of this Memorandum and Order, why this action should not be dismissed for lack of federal subject-matter jurisdiction. The parties are FOREWARNED that failure to timely show cause will result in the dismissal of this action.

2.  The parties' pending motions (ECF Nos. 4, 7) are HELD IN ABEYANCE pending the Court's resolution of the jurisdictional issue.

DATED this __2 1__ day of January, 2025.

BY THE COURT:

James K. Bredar
United States District Judge